IN the INTEREST OF JASON J.C., a Person Under the Age
of 18:
STATE of Wisconsin, Petitioner-Respondent,

v.

JASON J.C., Respondent-Appellant.

Court of Appeals

*No. 97–1259. Submitted on briefs August 18, 1997.—Decided
December 23, 1997.*

(Also reported in 573 N.W.2d 564.)

On behalf of the respondent-appellant, the cause was submitted on the briefs of *Eric E. Eberhardt* of *Runkel, Ansay & Eberhardt* of Port Washington.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *Jeffrey A. Sisley*, assistant district attorney.

There was an amicus curiae brief filed by *Nicholas L. Chiarkas*, state public defender, and *Brian C. Findley,* deputy first assistant state public defender.

Before Brown, Nettesheim and Anderson, JJ.

BROWN, J. Section 938.355(4m), STATS., permits juveniles who have attained the age of seventeen to petition the court to expunge its record of a prior delinquency adjudication. Jason J.C. wanted to take advantage of this new provision and he petitioned the court to expunge from its record two of his 1994 juvenile delinquency adjudications. The State, however, argued that because ch. 938, STATS., only applies to violations on or after July 1, 1996, the effective date of ch. 938, the court had no authority under § 938.355(4m) to expunge the 1994 delinquency adjudications. The trial court agreed. We conclude that because the statute *confers* a substantive right for a juvenile and does not *confirm* an existing right, § 938.355(4m) is substantive and not remedial legislation. Therefore, the trial court was correct in ruling that it did not have authority to expunge the 1994 adjudications from its record. We affirm.

In 1994, Jason, who was then fourteen years of age, was adjudged delinquent for two separate inci-

14

dents of sexual assault of a child contrary to § 948.02(1) and 948.02(2), STATS., 1993–94. In 1996, Jason, then seventeen years of age, petitioned the court to expunge from its record his two 1994 delinquency adjudications. Initially, the court granted his request. The State, however, filed a motion for reconsideration, arguing that the court had no authority under § 938.355(4m), STATS., to expunge the 1994 delinquency adjudications from its record. The court agreed and vacated its earlier order to expunge the 1994 delinquency adjudications. Jason appeals this order.

The general rule of statutory construction is that statutes are construed as relating to future and not to past acts. *See City of Madison v. Town of Madison*, 127 Wis. 2d 96, 101–02, 377 N.W.2d 221, 224 (Ct. App. 1985). However, if a statute is remedial or procedural, and not substantive in nature, it will be given retroactive application unless there is a clearly expressed legislative intent to the contrary or unless retroactive application will disturb contracts or vested rights. *See id.* at 102, 377 N.W.2d at 224. Remedial statutes have been defined as " 'those which afford a remedy, or improve or facilitate remedies *already existing* for the enforcement of rights and the redress of injuries.' " *Bruner v. Kops,* 105 Wis. 2d 614, 619, 314 N.W.2d 892, 894–95 (Ct. App. 1981) (emphasis added; quoted source omitted). In other words, if the right exists but the remedy does not, and a remedy is then provided by statute, the statute is remedial in nature. The question of giving a statute retroactive application is one of law which we decide ab initio, without paying special deference to the trial court's determination. *See Sacotte v. Ideal-Werk Krug & Priester Machinen-Fabrik,* 121 Wis. 2d 401, 405, 359 N.W.2d 393, 395 (1984).

15

Section 938.355(4m), STATS., states:

> EXPUNGEMENT OF RECORD. A juvenile who has been adjudged delinquent may, on attaining 17 years of age, petition the court to expunge the court's record of the juvenile's adjudication. The court may expunge the court's record of the juvenile's adjudication if the court determines that the juvenile has satisfactorily complied with the conditions of his or her dispositional order and that the juvenile will benefit and society will not be harmed by the expungement.

The State contends that a court's power under § 938.355(4m), STATS., to expunge its record of a juvenile adjudication is limited to records of adjudication resulting from violations occurring on or after July 1, 1996, the effective date of ch. 938, STATS. It supports its position by pointing out that the legislature intended ch. 938 to apply only to *violations* committed on or after July 1, 1996. *See* 1995 Wis. Act 77, § 9300(1g). Therefore, it concludes that § 938.355(4m) cannot be applied retroactively to allow a court to expunge its record of a 1994 violation and subsequent adjudication.

■

In the face of such an explicit pronouncement by our legislature, Jason realizes that he must convince this court to draw an exception for § 938.355(4m), STATS., by holding that the expungement statute is remedial rather than substantive. He presents three theories about how this could be so. We will address them in turn. Jason first argues that a court has always possessed an inherent power to expunge its own records. The scope of a court's inherent power is a question of law which we review de novo. *See Ball v. District*

16

*No. 4, Area Bd.*, 117 Wis. 2d 529, 537, 345 N.W.2d 389, 394 (1984).

■

The doctrine of inherent powers derives from this state's separation of governmental powers between the three branches of government. *See Breier v. E.C.*, 130 Wis. 2d 376, 385, 387 N.W.2d 72, 76 (1986). Courts possess these powers because without them they could neither maintain their dignity, transact their business, nor accomplish the purpose of their existence. *See id.* at 386, 387 N.W.2d at 76. A court's inherent powers have been defined as those " 'without which a court cannot properly function.' " *Id.* at 387, 387 N.W.2d at 77 (quoted source omitted).

In *Breier*, our supreme court determined that courts do not have an inherent power to expunge a juvenile's *police* records because such a power was not "an institutional necessity of the judiciary." *See id.* Similarly, we conclude that the power to expunge *court* records of a juvenile's adjudication is also not an institutional necessity of the judiciary. This is because it is not necessary to the orderly functioning of the court, nor is it necessary to maintain the court's dignity, enable it to transact its business or accomplish the purpose of its existence. As with the police records at issue in *Breier*, a court does not need the power to expunge its records of juvenile adjudications to properly administer and perform its constitutional and statutory duties.

■

Jason's second theory is that the court has always possessed the equitable power to expunge court records. We are not convinced. The power to grant equitable remedies allows a court to provide remedies to private litigants in situations in which there is no

17

explicit statutory authority or in which the available legal remedy is inadequate to do complete justice. *See id.* at 388, 387 N.W.2d at 77. The relief that a court grants, however, must be in response to an invasion of a legally protected right. A court may wield its equitable authority and provide complete justice only where there is a wrong. *See id.* at 389, 387 N.W.2d at 77.

Prior to the promulgation of the statute at issue, the court's maintenance of juvenile adjudications did not violate any recognized right of a juvenile. Juveniles in positions similar to Jason's, therefore, had not suffered a wrong from which a remedy was necessary. Jason claims that there did exist a wrong, which he refers to as "stigmatization." He argues, for example, that because it will be stigmatizing for him, and others like him, to have to register as a sex offender under § 301.45, STATS.,[1] a court would have the power here just as it had the power in the past to provide relief. However, we reiterate that courts may grant equitable relief only where there is a recognized wrong for which there must be a remedy. The stigma attached to registering as a sex offender under § 301.45 does not invade any legally protected right. Therefore, Jason has not shown how the courts were empowered to expunge records as a form of equitable relief.

Jason's third argument is that we should not take at face value the State's argument that because the legislature expressly wrote that ch. 938, STATS., applies only to those violations occurring *on or after* July 1, 1996, the effective date of the statute, § 938.355(4m), STATS., was necessarily intended by the legislature to be

---

[1] Section 301.45, STATS., was redesignated from § 175.45, STATS., by 1995 Wis. Act 440, effective June 1, 1997.

18

included in that pronouncement. When determining whether to give a statute retroactive effect, we are bound by the legislature's express intent. *See City of Madison*, 127 Wis. 2d at 102, 377 N.W.2d at 224 (statutes will not be given retroactive effect if there is a clearly expressed legislative intent to the contrary).

Jason contends that we must separate the purpose of expungement from the rest of ch. 938, STATS. He argues that unlike the other forms of dispositional orders contained in ch. 938, the power of expungement under § 938.355(4m), STATS., focuses solely on a petitioner's past history and postadjudication conduct and carries with it a lifelong benefit to the petitioner.

But we do not believe that § 938.355(4m), STATS., can be severed from the other statutes in ch. 938, STATS., which are applicable only to violations on or after the effective date of ch. 938. In fact, the legislature has specifically earmarked those subsections of ch. 938 which may be applied to violations occurring prior to the effective date of the act.[2] *See* 1995 Wis. Act 77,

---

[2] 1995 Wis. Act 77, § 9300, entitled "**Initial applicability; general statement**" provides:

> (1g) Except as otherwise provided in section 9310 of this act, this act first applies to violations committed on the effective date of this subsection.

1995 Wis. Act 77, § 9310, entitled "**Initial applicability; circuit courts**" provides in part:

> (3) SUBSTITUTION OF A JUDGE. The treatment of section 938.29 (1g) . . . first applies to petitions filed on the effective date of this subsection.
>
> (4) NO CONTEST PLEAS. The treatment of section 938.30(4)(bm) . . . first applies to pleas entered on the effective date of this subsection.
>
> . . . .
>
> (9) DEFERRED PROSECUTION AGREEMENTS AND CONSENT DECREES. The treatment of sections 938.245(2)(b) and 938.32(2)(a) and (b) . . .

§§ 9300, 9310 and 9400. The power to expunge records under § 938.355(4m) is not listed. If the legislature wanted to exempt § 938.355(4m) from the act detailing how ch. 938 only applies to violations occurring after the effective date of the statute, it clearly had the opportunity to do so.

We admit that we do not like the result. There is always a reason behind a canon of statutory construction. And the reason why we normally apply nonremedial statutes prospectively unless told by the legislature to do otherwise is because creating new rights has a tendency to disturb the stability of past transactions. It can cause injustice to those who would act otherwise had they the opportunity to inform themselves of the law and conduct themselves accordingly. *See Employers Ins. of Wausau v. Smith,* 154 Wis. 2d 199, 223–24, 453 N.W.2d 856, 866 (1990). But here, the typical justifications against giving a statute retroactive application do not appear to apply. The State has supplied us with no rationale explaining how it would be hurt by retroactive administration of the statute. Indeed, the statute has a built-in mechanism for the State to argue that expungement would not be in the public's interest. And the statute does not give the juve-

first applies to deferred prosecution agreements and consent decrees entered into on the effective date of this subsection.

(10) TIME LIMITS IN JUVENILE PROCEEDINGS. The treatment of sections 938.24(5), 938.245(7), 938.25(2), 938.315(1)(c) and (3) and 938.365(6) . . . first applies to time periods beginning on the effective date of this subsection.

1995 Wis. Act 77, § 9400, entitled "**Effective dates**" provides:

This act takes effect on July 1, 1996, or on the day after publication, whichever is later, except as follows:

None of the listed exceptions mention ch. 938, STATS.

20

nile the absolute right to expungement. The statute only gives the juvenile the right to *request* expungement.

In *Employers Insurance*, the supreme court wrote in a footnote that we should not apply the canon against retroactivity mechanistically. *See id.* at 224 n.21, 453 N.W.2d at 866. And in the body of that opinion, the court wrote that "[c]anons of interpretation are useful aids to determine legislative intent only when the underlying reasons for the rule are served by the rule's application in the case." *Id.* at 225, 453 N.W.2d at 866. But when the court forgoes using a canon of construction regarding prospectivity or retroactivity, it does so in favor of reviewing the legislative history of the statute. The *Employers Insurance* case we have just cited is a case in point. There the court was faced with an issue where the legislature had "revealed its intent that the legislation applies retroactively" but recognized that the question was the scope or extent of that retroactive application. *See id.* at 226, 453 N.W.2d at 866. The court then went beyond the canon of statutory construction concerning prospectivity and retroactivity and, instead, explored the history of the legislation. *See id.* The court explained that the cardinal rule of all statutory interpretation is to discern the intent of the legislature. *See id.* at 226, 453 N.W.2d at 867. The court said that it ascertains the legislative intent by "examining the language of the statute and the scope, history, context, subject matter and purpose of the statute." *Id.*

██

We have conducted a similar analysis. Our thorough review of the legislative history, however, has revealed nothing which would suggest that the legislature meant to apply § 938.355(4m), STATS., to violations

occurring before July 1, 1996. If anything, the legislature expressed its will to completely separate juveniles committed under ch. 48, STATS., 1993–94, from juveniles adjudged under ch. 938, STATS., unless specifically stated otherwise. If the legislature meant to grant the right to seek expungement to juveniles committed under ch. 48, it should amend the statutes to reflect it. While we think that drawing an artificial line between juveniles adjudged under ch. 48 from juveniles adjudged under ch. 938 as regards the right to seek expungement makes no sense from a public policy standpoint, that is a choice for the legislature to make; it is not our decision to make. We agree with Jason that the purpose of expungement, unlike other forms of dispositional orders in ch. 938, focuses on past history and postadjudication conduct. But we cannot find any legislative allocution, either in the legislative history or in the context of the statute, to support Jason. We reluctantly affirm.

*By the Court.*—Order affirmed.