746 So.2d 410 (1999)
STATE
v.
C.M., C.D.M., and S.D.[1]
CR-98-0447.
Court of Criminal Appeals of Alabama.
May 5, 1999.
Rehearing Denied July 2, 1999.
Certiorari Denied October 22, 1999.
*411 Bill Pryor, atty. gen., and Cedric Colvin, asst. atty. gen., for appellant.
Joe W. Morgan, Jr., and Sandi Eubank Gregory, Birmingham; and Lee Allen Dubois and Michelle M. Wales, Birmingham, for appellee.
Alabama Supreme Court 1981735.
PER CURIAM.
The State appeals the trial court's finding that Act No. 98-489, 1998 Ala. Act, an amendment to the Community Notification Act ("the Act"),[2] codified in § 15-20-20 et *412 al., Ala.Code 1975, is unconstitutional as applied to C.M., C.D.M., and S.D. This amendment, which became effective on August 1, 1998, made the Act applicable to juveniles.
In 1996, C.M., a mentally retarded 13-year-old, was adjudicated delinquent on the underlying offense of attempted rape. He was placed in the custody of the Alabama Department of Youth Services and was ordered to participate in a sexual offender treatment program. After C.M. had successfully completed his sentence, he was released to the custody of his mother and was ordered to submit a DNA sample, pursuant to the Act, § 15-20-21(k), Ala.Code 1975. C.M.'s mother lives near a daycare center and has minor children, other than C.M., living with her.[3]
In 1996, C.D.M., then 12 years old, was adjudicated delinquent on the underlying offense of sodomy. He was placed in the custody of the Alabama Department of Youth Services, and he participated in a residential treatment program. After the Legislature amended the Act to designate juvenile adjudications as "convictions" subject to the Act's provision, C.D.M. was ordered to submit to DNA testing before being released to his mother, S.D. S.D. lives near a child care center and has a minor child, other than C.D.M., living with her.
In August 1998, when C.M. and C.D.M. were due to be released to the custody of their mothers, C.M., C.D.M., and S.D. attempted to stay enforcement of the Act by filing petitions for the writ of mandamus in this Court. This Court temporarily stayed application of the Act and directed the trial judge, the Honorable Sandra Storm, to hold a hearing on the allegations that application of the Act as to C.M. and C.D.M. was unconstitutional. After an extensive hearing, Judge Storm ruled that the Act violated the ex post facto clause of the United States Constitution because the 1998 amendment created a penalty that was not prescribed when C.M. and C.D.M. were adjudicated delinquent in 1996. Judge Storm also held that the Act's residency and reporting provisions were unconstitutionally vague and that the Act interfered with the right to intimate association of parents and children. Judge Storm found that the Act did not deny C.M. and C.D.M. equal protection of the law nor did it violate the separation of powers doctrine. Because Judge Storm declared the Act unconstitutional as to C.M. and C.D.M., we dismissed the mandamus petitions. Ex parte C.M., 727 So.2d 898 (Ala.Cr.App.1999), and Ex parte C.D.M. and S.D., 727 So.2d 897 (Ala.Cr. App.1999).
The State, pursuant to § 12-22-91, appealed Judge Storm's ruling that the Act was unconstitutional as applied in these case. C.M. and C.D.M. filed cross appeals, challenging those portions of Judge Storm's ruling that held that the Act did *413 not violate the Equal Protection Clause and the separation of powers doctrine.
A brief history of the development of the Act is helpful in understanding the background of this complicated case. As early as 1967, Alabama enacted legislation which provided that convicted sex offenders were obliged to register with law enforcement personnel once they were convicted. Act No. 506, 1967 Ala. Act. Pursuant to this act the Department of Public Safety was to maintain "a system for registering or recording and indexing the information relating to sex offenders." § 15-20-5, Ala.Code 1975. In 1996, Alabama expanded on this law and adopted a community notification act, known as "Megan's Law."[4] Its purpose was to notify the "community" when a convicted sex offender intended to make his residence in a neighborhood. See § 15-20-20.1, Ala.Code 1975. The Alabama Legislature in 1998 extensively amended the Act and broadened its application to encompass juvenile adjudications. See Act No. 98-489. The term "conviction," for purposes of the Act, was redefined to read as follows: "A determination of guilt as a result of a plea, trial, or adjudication as either a youthful offender or a delinquent, regardless of whether adjudication is withheld." § 15-20-21(a)(3).
Of those states that have community notification laws, Alabama's Act has the broadest application. See Annot., Convicted Sex Offenders: Where Do You Live? Are We Entitled to Know? A Year's Retrospective of Ex Post Facto Challenges to Sex Offender Community Notification Laws, 22 Nova L.Rev. 585 (1998); Annot., Welcome to Anytown, U.S.A.Home of Beautiful Scenery (and a Convicted Sex Offender): Sex Offender Registration and Notification Laws in E.B. v. Verniero, 43 Vill. L.Rev. 581 (1998). Some states specifically exclude juvenile sex offenders from the application of the law, See Ky. Rev.Stat. Ann. §§ 17.500 (Michie 1996) and La.Rev.Stat. Ann. §§ 540 (West 1998), while other states provide that the trial court determine the dangerousness of the sex offender before assessing the level of public dissemination about the sex offender's record. In these latter states, the first tier is the least serious sex offender; there is very limited public dissemination about this type of sex offender. See E.B. v. Verniero, 119 F.3d 1077 (3rd Cir.1997), cert. denied, 522 U.S. 1110, 118 S.Ct. 1039, 140 L.Ed.2d 105 (1998) (New Jersey); Doe v. Gregoire, 960 F.Supp. 1478 (W.D.Wash. 1997) (Washington); Roe v. Office of Adult Probation, 125 F.3d 47 (2d Cir.1997) (Connecticut); Doe v. Pataki, 940 F.Supp. 603 (S.D.N.Y.1996), aff'd in part, rev'd in part, 120 F.3d 1263 (2nd Cir.1997), cert. denied, 522 U.S. 1122, 118 S.Ct. 1066, 140 L.Ed.2d 126 (1998) (New York); Doe v. Weld, 954 F.Supp. 425 (D.Mass.1996) (Massachusetts).
Alabama's Act requires that all sex offenders, no matter the circumstances surrounding the offense, register as convicted sex offenders and be subject to the community notification provisions of the Act. The Act provides that persons convicted of an enumerated criminal sex offense[5] must, 30 days before their release from custody, declare their intent to reside at a designated location. § 15-20-21(b). The responsible agency then notifies law enforcement agencies in the designated area. Law enforcement agencies are then furnished *414 with information on the convicted sex offender, i.e., the offender's sex offense history, fingerprints, and a current photograph. Within five days after the law enforcement agencies are notified, the community is notified pursuant to the procedures set forth in § 15-20-22. The amount of public dissemination depends on the population of the city in which the sex offender intends to reside. Specific provisions are made for the largest cities in Alabama; i.e., Birmingham, Mobile, Huntsville, and Montgomery. § 15-20-22(a)(1). In these cities, all persons who have residences within 1,000 feet of the declared residence of the sex offender, and all public and private schools, licensed daycare centers, and any other child care facilities within 3 miles of the residence are notified. A community notification flyer is then mailed to the residences. The flyer contains the sex offender's name, address, physical description, a current photograph, and a statement of the circumstances surrounding the conviction. § 15-20-21(a)(2). Notice may also be by means of newspapers or the Internet. § 15-20-22(a)(1).

Standard of Review
Because this case involves a question of lawthe constitutionality of Act No. 98-489 as applied to juveniles the trial court's ruling is entitled to no presumption of correctness and this Court will apply a de novo standard of review. Taylor v. Cox, 710 So.2d 406 (Ala.1998), and Ex parte Graham, 702 So.2d 1215 (Ala.1997), on remand, 702 So.2d 1222 (Ala. Civ.App.1997). See also In the Matter of the Welfare of C.D.N., 559 N.W.2d 431 (Minn.App.1997); In the Interest of Jason J.C., 216 Wis.2d 12, 573 N.W.2d 564 (1997). When applying the de novo standard of review, this Court is not obligated to rely on the same analysis as that employed by the trial court. Ex parte Graham, 702 So.2d at 1221. However, this Court's review is limited to the constitutional claims raised before the trial court. Armstrong v. Roger's Outdoor Sports, Inc., 581 So.2d 414 (Ala.1991).

Equal-Protection Claim
C.M. and C.D.M. argue that the trial court erred in not holding that the Act violates their right to equal protection of the law because the Act permits a convicted adult sex offender to return to a home where a minor child resides, but it does not afford a juvenile sex offender this same right. Section 15-20-22(g) states:
"No criminal sex offender shall be allowed to establish a residence or any other living accommodation where a minor resides. Notwithstanding the foregoing, a criminal sex offender may reside with a minor if the criminal sex offender is the parent of the minor, unless one of the following conditions applies:
"(1) The criminal sex offender's parental rights have been or are in the process of being terminated as provided by law.
"(2) Any minor or adult child of the criminal sex offender was a victim of a criminal sex offense committed by the criminal sex offender."
(Emphasis added.)
Claims that a law violates an equal protection right have traditionally been reviewed applying one of three levels of review. The level of review depends on the parties involved and the right affected by the law. If the law affects a fundamental right or a suspect class a reviewing court applies the "strict scrutiny" standard of review. An intermediate level of review is applied if the law affects a protected economic interest or liberty. If the law "does not employ a classification based on race, sex, national origin, or legitimacy of birth and does not impinge upon a fundamental right" it is subject to review under the rational-relationship analysis. Ex parte Robertson, 621 So.2d 1289 (Ala. 1993).[6]
*415 Here, the two classes that are treated differently are: (1) juveniles who are adjudicated sex offenders and (2) adults who are convicted of a sex offense. Age is not a suspect class subject to the strict scrutiny analysis. Massachusetts Board of Retirement v. Murgia, 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976). Because neither group involved is a suspect class, we turn to the individual interest affected by the statute. If the interest involves a fundamental right then a strict scrutiny analysis is triggered.
C.M. and C.D.M. argue that the law impinges on a fundamental right because it affects their right to intimate association, i.e., to live with their families. The right to associate with family members was recognized by the United States Supreme Court in Roberts v. United States Jaycees, 468 U.S. 609, 618, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984), as a fundamental right that triggers the strict scrutiny analysis.[7] The State counters C.M.'s and C.D.M.'s argument by asserting a juvenile who has been adjudicated delinquent no longer has the traditional rights that he or she was afforded prior to the adjudication.
However, our resolution of this issue is not dependent on determining whether a fundamental right is involved. Under any level of review, the statute violates principles of equal protection. Under the lowest tier of review, there is no rational basis for treating adult sex offenders differently than juvenile sex offenders. In fact, a more persuasive argument can be advanced for prohibiting adult sex offenders from returning to their homes than for prohibiting juvenile sex offenders from returning to their homes. Once released from prison, adult sex offenders can work to support themselves. Here, C.M. and C.D.M. are under the minimum work age and are unable to support themselves. These juveniles would become wards of the state if they were not allowed to return to their families. On its face, the law violates the Equal Protection Clause.[8]
For the reasons stated above, we hold the Act, as it applies to juveniles, unconstitutionally violates a juvenile's right to equal protection of the law.

Ex-Post-Facto-Clause Claim
The State argues that the trial court erred in finding that the Act violates the Ex Post Facto Clause of the United States Constitution. It argues that, although the provisions of the Act are applied *416 retroactively, see § 15-20-22(c), there is no added punishment; therefore, the State argues the Act does not offend the Ex Post Facto Clause.
Article I, § 10, United States Constitution, states in part: "No state shall ... pass any ... ex post facto law." An ex post facto law is a law passed after the commission of an act that increases the legal consequences of the act. Collins v. Youngblood, 497 U.S. 37, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990). However, a law passed and applied retroactively, but which does not increase the punishment, does not violate the Ex Post Facto Clause. Williams v. State, 393 So.2d 492, 494 (Ala. Cr.App.1981).
Several states have addressed the constitutionality of community notification laws, specifically, whether these laws, which are applicable to sexual offenders who were convicted before the passage of the laws, violate the Ex Post Facto Clause. See E.B. v. Verniero, 119 F.3d 1077 (3d Cir.1997), cert. denied, 522 U.S. 1110, 118 S.Ct. 1039, 140 L.Ed.2d 105 (1998) (New Jersey's law, which provides a tier process of imposing restrictions, was found not to violate the Ex Post Facto Clause); Doe v. Pataki, 120 F.3d 1263 (2d Cir.1997) (New York's law, which also provides a three-tier process, was found not to violate the Ex Post Facto Clause); State v. Pickens, 558 N.W.2d 396 (Iowa 1997) (community notification act was not punitive); State v. Taylor, 67 Wash.App. 350, 835 P.2d 245 (1992), review denied, 123 Wash.2d 1031, 877 P.2d 695 (1994) (community notification act was not punitive and did not violate the Ex Post Facto Clause). Compare Doe v. Weld, 954 F.Supp. 425 (D.Mass.1996) (under three-tier review, community notification act violated the Ex Post Facto Clause); State v. Myers, 260 Kan. 669, 923 P.2d 1024 (1996), cert. denied, 521 U.S. 1118, 117 S.Ct. 2508, 138 L.Ed.2d 1012 (1997) (Kansas's law, which is substantially similar to Alabama's law and provides for total public access to information about sex offenders, was found to violate the Ex Post Facto Clause). See Annot., Convicted Sex Offenders: Where Do You Live? Are We Entitled to Know? A Year's Retrospective of Ex Post Facto Challenges to Sex Offender Community Notification Laws, 22 Nova L.Rev. 585 (1998), for a greater discussion of this issue.
The above cases reviewing different community notification laws disagree as to the standard to apply when reviewing whether such an act violates the Ex Post Facto Clause. Here, the parties seem to agree that this Court should apply a form of the standard recently discussed by the United States Supreme Court in Kansas v. Hendricks, 521 U.S. 346, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997).
In Hendricks, the United States Supreme Court upheld Kansas's "Sexually Violent Predator Act" against a claim that it violated the Ex Post Facto Clause. The Sexually Violent Predator Act, enacted in 1994, establishes procedures for the "civil commitment of persons who, due to a `mental abnormality' or a `personality disorder,' are likely to engage in `predatory acts of sexual violence.' Kan. Stat. Ann. § 59-29a01 et seq. (1994)." 521 U.S. at 350, 117 S.Ct. at 2076 (emphasis added). That act allowed the state to keep a convicted sex offender incarcerated past his release date if he was found to possess a "mental abnormality" that could result in repeated acts of sexual violence.
The Supreme Court focused on the legislature's intent in enacting the law, but stated that the legislative intent could be rejected "where a party challenging the statute provides `the clearest proof that `the statutory scheme [is] so punitive either in purpose or effect as to negate [the State's] intention' to deem it `civil.'" 521 U.S. at 361, 117 S.Ct. 2072. The Court, in defining "clearest proof," cites its decisions in United States v. Ward, 448 U.S. 242, 100 S.Ct. 2636, 65 L.Ed.2d 742 (1980), and Kennedy v. Mendoza-Martinez, 372 U.S. 144, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963). Kennedy v. Mendoza-Martinez establishes a seven-pronged analysis to determine *417 whether an act is so punitive that it negates the legislature's intent that it is "civil" and not criminal. This standard is most frequently applied by other states when reviewing community notification laws.
The legislative intent in enacting the Alabama Community Notification Act is stated in § 15-20-20.1:
"The Legislature finds that the danger of recidivism posed by criminal sex offenders and that the protection of the public from these offenders is a paramount concern or interest to government. The Legislature further finds that law enforcement agencies' efforts to protect their communities, conduct investigations, and quickly apprehend criminal sex offenders are impaired by the lack of information about criminal sex offenders who live within their jurisdiction and that the lack of information shared with the public may result in the failure of the criminal justice system to identify, investigate, apprehend, and prosecute criminal sex offenders.
"The system of registering criminal sex offenders is a proper exercise of the state's police power regulating present and ongoing conduct. Comprehensive registration and periodic address verification will provide law enforcement with additional information critical to preventing sexual victimization and to resolving incidents involving sexual abuse and exploitation promptly. It will allow them to alert the public when necessary for the continued protection of the community.
"Persons found to have committed a sex offense have a reduced expectation of privacy because of the public's interest in safety and in the effective operation of government. In balancing offender's due process and other rights, and in the interests of public security, the Legislature finds that releasing information about criminal sex offenders to law enforcement agencies and providing access to or releasing such information about criminal sex offenders to the general public will further the primary government interest of protecting vulnerable populations, and in some instances the public, from potential harm.
"Therefore, the state policy is to assist local law enforcement agencies' efforts to protect their communities by requiring criminal sex offenders to register and record their address of residence, to be photographed and fingerprinted, and to authorize the release of necessary and relevant information about criminal sex offenders to the public as provided in this article."
Certainly, the legislative purpose in enacting the Community Notification Act is protecting the public's safety. "However, our analysis does not end with our `public safety' conclusion. Even when the legislative intent behind the statute is nonpunitive, we should ask whether the `statutory scheme was so punitive either in purpose or effect as to negate that intention.'" State v. Myers, 260 Kan. at 680, 923 P.2d at 1032, quoting United States v. Ward, 448 U.S. at 248-49, 100 S.Ct. 2636.
We must determine: (1) whether the sanction imposed by the act involves affirmative disability or restraint, (2) whether historically the sanction has been viewed as punitive, (3) whether a finding of scienter was necessary before the act is applied, (4) whether the act promotes retribution and deterrence, (5) whether the behavior to which it applies was already criminal, (6) whether the act has any alternate remedial purposes, and (7) whether the scope of the act is excessive in relation to its alternative purpose. Mendoza-Martinez, 372 U.S. at 168-69, 83 S.Ct. 554. We will specifically mention those of the seven considerations which negatively impact on the juveniles.
Whether the sanction imposed involves affirmative disability or restraint. The Act restricts a convicted sex offenders's movements in the community and defines where the offender may or may not reside. *418 As applied to juveniles, the Act alienates a juvenile from his home if minor siblings also reside in the home.[9] (See discussion in the equal protection argument.) Furthermore, the Act as applied to juveniles requires public dissemination of the juvenile's prior sexual offender adjudications, information that before the passage of Act. No. 98-489, was not available to the general public and, information that Alabama zealously guarded from public disclosure. See §§ 12-15-100 and 12-15-101, Ala. Code 1975, and Rule 52, Ala.R.App.P. The stated purposes of the Alabama Juvenile Justice Act are contained in § 12-15-1.1:
"The purpose of this chapter is to facilitate the care, protection, and discipline of children who come within the jurisdiction of the juvenile court, while acknowledging the responsibility of the juvenile court to preserve the public peace and security.
"In furtherance of this purpose, the following goals have been established for the juvenile court:
"(1) To preserve and strengthen the child's family whenever possible, including improvement of home environment.
"(2) To remove the child from the custody of his or her parents only when it is judicially determined to be in his or her best interest or for the safety and protection of the public.
"(3) To reunite a child with his or her parents as quickly and as safely as possible when the child has been removed from the custody of his or her parents.
"(4) To secure for any child removed from parental custody the necessary treatment, care, guidance, and discipline to assist him or her in becoming a responsible productive member of society.
"(5) To promote a continuum of services for children and their families from prevention to aftercare, considering wherever possible, prevention, diversion, and early intervention.
"(6) To promote the use of community based alternatives as deterrents to acts of juvenile delinquency and as least restrictive dispositional alternatives.
"(7) To hold a child found to be delinquent accountable for his or her actions to the extent of the child's age, education, mental and physical condition, background, and all other relevant factors and to provide a program of supervision, care, and rehabilitation, including restitution by the child to the victim of his or her delinquent acts.
"(8) To achieve the foregoing goals in the least restrictive setting necessary, with a preference at all times for the preservation of the family and the integration of parental accountability and participation in treatment and counseling programs."
Clearly, the legislative intent in enacting the Juvenile Justice Act is to keep the identities of juveniles from public disclosure because the purpose of The Juvenile Justice Act is not to punish but to rehabilitate. Applying the provisions of the community notification act to juveniles totally abolishes long-standing Alabama precedent by directly contradicting the stated goal of the Juvenile Justice Act, i.e., to return the juvenile to the home as quickly as possible. When C.M. and C.D.M. committed the sexual offenses in 1996, the Act was not applicable to them. Also, the Act makes it a criminal offense, a Class C felony, for a sex offender to knowingly fail to comply with any provision of the Act. For these reasons, the Act imposes an affirmative disability or restraint on juvenile offenders.
Whether the scope of the Act is excessiveness in relation to alternative purpose. The provisions of the Act as applied to juveniles are excessive, given their purpose of protecting the public. As applied to juveniles, the Act goes beyond what is *419 necessary to accomplish its stated purpose. Certainly, there is evidence to support this conclusion in the Act itself. See 15-20-22(g), which allows a convicted adult sex offender to return home if there are minor children in the home, but does not allow a juvenile sex offender to return home if other minor children reside in the home. This is clearly evidence of the internal inconsistencies of the Act. Also, the Act places no restrictions on who has access to the information. The Act as now written allows any newspaper to publish information about a juvenile sex offender. However, under the Juvenile Justice Act, such dissemination is a criminal offense. Section 12-15-101 makes it a criminal offense, a misdemeanor, to knowingly use law enforcement records that concern a juvenile.
The Kansas Supreme Court in State v. Myers, reviewing a community notification act substantially similar to Alabama's, faced the issue whether Kansas's act violated the Ex Post Facto Clause. The Court held that the act was unconstitutional because as applied, its scope was excessive and disclosure of the information was unrestricted. The Myers court stated:
"We hold that the legislative aim in the disclosure provision was not to punish and that retribution was not an intended purpose. However, we reason that the repercussions, despite how they may be justified, are great enough under the facts of this case to be considered punishment. The unrestricted public access given to the sex offender registry is excessive and goes beyond that necessary to promote public safety.
"Because KSORA's [Kansas Sex Offender Registration Act] disclosure provision makes more burdensome the punishment for a crime after its commission, we conclude K.S.A. 22-4909, as applied to Myers, violates the constitutional prohibition against ex post facto laws.
"We emphasize we are not balancing the rights of Myers or other sex offenders against the rights of his or their victims. What we are addressing is the right of every citizen, in this case, Myers, to test a claim of constitutional infringement arising from retroactive legislation. Regardless of legislative motivation, we have a duty to entertain such a claim when asserted and to resolve the tension between the positions of Myers and the State."
260 Kan. at 698, 923 P.2d at 1043. An Alaska court in Rowe v. Burton, 884 F.Supp. 1372 (D.Alaska 1994), appeal dismissed, 85 F.3d 635 (9th Cir.1996), focused on the excessive scope of the public dissemination in holding that Alaska's notification act was an ex post facto law. Alaska's act was not as broad in application as Alabama's; it allowed some information to remain confidential and not available to the public. 884 F.Supp. at 1376.
Our research has revealed only two other states where the community registration and notification acts were attacked on ex post facto grounds by juveniles. Doe v. Weld, 954 F.Supp. 425 (D.Mass.1996), and In the Matter of the Appeal in Maricopa County Juvenile Action No. JV-132744, 188 Ariz. 180, 933 P.2d 1248 (Ct.App.1996). In Doe v. Weld, a juvenile challenged Massachusetts's community notification act, which provided for three levels of public dissemination. The juvenile had been placed in level-one status, which limited the accessibility of the information. The court found that the effects of the act were not so great as to amount to a punishment which would offend the Ex Post Facto Clause. In the case of In the Matter of the Appeal in Maricopa County Juvenile Action No. JV-132744, a case challenging only Arizona's registration requirement, Arizona determined that sex-offender registration as applied to juveniles did not violate the Ex Post Facto Clause.
The effect of Alabama's Community Notification Act is to punish C.M. and C.D.M. more harshly for a crime than was possible when the offense was committed; therefore, as to them and similarly situated juveniles, the act violates the Ex Post Facto *420 Clause of the United States Constitution.[10]
We note that Judge Storm's order stayed application of the Act, including its registration provisions. Although Judge Storm did not explicitly rule on the constitutionality of the registration provision, we consider Judge Storm's stay as an implicit finding that the registration portions of the Act likewise violate the Ex Post Facto Clause.
However, we do not believe that the registration portion of the Act violates the Ex Post Facto Clause. We cite with approval the decision of the Arizona Court of Appeals in In the Matter of the Appeal in Maricopa County Juvenile Action No. JV-132744, which held that the registration provisions of the Arizona act were not so punitive as to amount to punishment. The registration provision of the Alabama Act makes the information available only to law enforcement. The only requirement is that a juvenile register with law enforcement. We do not view the act of registering with police as an additional punishment that overrides the stated legislative purpose of protecting the public.
The only reference to juveniles in the Act is found in the definition of "conviction" in § 15-20-21(a)(3), the registration portion of the Act. Thus, because we hold that the notification provisions of the Act as applied to juveniles are unconstitutional, we must sever from the Act the reference to juveniles in both the registration portion, § 15-20-21, and the community notification portion in § 15-20-22. The term "conviction" is identical for both portions of the Act and is defined in § 15-20-21(a)(3) as follows:
"A determination of guilt as a result of a plea, trial, or adjudication as either a youthful offender or a delinquent, regardless of whether adjudication is withheld."
(Emphasis added.) After severing this portion from the Act, we must determine if the Act can still survive. The Legislature, when enacting this law, also adopted a severability clause. Act No. 98-489, § 4, states:
"The provisions of this act are severable. If any part of this act or the application of such part to any person or circumstance is declared invalid or unconstitutional, that declaration shall not affect either the part which remains or the application of such parts to any person."
The Alabama Supreme Court stated in Beck v. State, 396 So.2d 645, 658 (Ala. 1980), on remand, 396 So.2d 666 (Ala.Cr. App.1981), after remand, 485 So.2d 1196 (Ala.Cr.App.1982), rev'd on other grounds, 485 So.2d 1201 (Ala.1984):
"The guiding star in severability cases is legislative intent. In A. Bertolla & Sons v. State, 247 Ala. 269, 271, 24 So.2d 23 (1945), this Court stated:
"`One of the tests used to determine whether an act is or is not severable, so that a portion may be rejected, is that it ought not to be held wholly void unless the invalid portion is so important to the general plan and operation of the law in its entirety as reasonably to lead to the conclusion that it would not have been adopted if the legislature had perceived the invalidity of the part so held to be unconstitutional. Where the valid and invalid parts are so bound together that the invalid part is a material inducement to the valid portion, the whole is invalid. Union Bank & Trust Co. v. Blan, 229 Ala. 180, 165[155] So. 612, and cases cited; 6 Ruling Case Law page 125, section 123. [Emphasis added.]'
". . . .

*421 "The presence of a severability clause in the death penalty statute has some significance. As Mr. Justice Beatty stated for a unanimous court in Comer v. City of Mobile, 337 So.2d 742 (Ala.1976):
"`... Such a clause is persuasive authority that the Legislature intended the valid portion to survive. Mitchell v. Mobile County, 294 Ala. 130, 313 So.2d 172 (1975).'
"In Opinion of the Justices, 284 Ala. 626, 628-629, 227 So.2d 396 (1969), this Court held that:
"`It is a well-established rule in this State that a severability clause should be given effect where possible in order to save a legislative enactment. Allen v. Walker County, 281 Ala. 156, 199 So.2d 854; Wilkins v. Woolf, 281 Ala. 693, 208 So.2d 74; San Ann Tobacco Co. v. Hamm, 283 Ala. 397, 217 So.2d 903[803]. Such a clause or provision in an act is to be given its full scope and effect. Shuttlesworth v. Birmingham Bd. of Ed. of Jefferson County, Alabama, 162 F.Supp. 372, affirmed 358 U.S. 101, 79 S.Ct. 221, 3 L.Ed.2d 145.'"
Although we must strike the above unconstitutional provision from the definition of conviction, our ruling here does not affect the applicability of the Act to adults. Indeed, the Act, made a law in 1996, did not apply to juveniles until it was amended effective August 1, 1998.
For the reasons stated in this opinion, we affirm Judge Storm's holding that the Alabama Community Notification Act is unconstitutional as applied to juveniles.[11]
AFFIRMED.
LONG, P.J., and McMILLAN, COBB, and BASCHAB, JJ., concur
FRY, J., concurs in the result, with opinion.
FRY, Judge (concurring in the result).
I agree that Alabama's Community Notification Act, as it applies to juveniles, unconstitutionally violates a juvenile's right to equal protection of the law. I further agree that the registration portion of the act, even as it applies to juveniles, does not violate the Ex Post Facto Clause. The majority also correctly concludes that its holding effectively severing the reference to juveniles from the definition of "conviction" in § 15-20-21(a)(3), Ala.Code 1975, renders the Act inapplicable to minors, but still applicable to adults.
I, however, disagree with the majority's analysis and its conclusion that the notification portion of the act constitutes an additional punishment and that it therefore violates the Ex Post Facto Clause of the United States Constitution. In Robinson v. State, 730 So.2d 252, 254 (Ala.Cr.App. 1998), this Court unequivocally stated that the "[r]egistration and community notification requirements for sex offenders do not constitute punishment." The majority it its analysis relies heavily on State v. Myers, 260 Kan. 669, 923 P.2d 1024 (1996), and the history of the Alabama Juvenile Justice Act, including the legislative intent in enacting the Juvenile Justice Act, to conclude that the Community Notification Act imposes a punishment on juvenile offenders. The Legislature afforded juveniles the privilege of confidentiality. By including juveniles within the Community Notification Act, the Legislature, acting within its authority, effectively revoked that privilege. That revocation in and of itself does not constitute a punishment. Moreover, juveniles are not punished by the public availability of their otherwise confidential information. Even though public disclosure of registration information affects juveniles whose identities were formerly more protected than adults whose criminal acts were always a matter *422 of public record public disclosure does not carry such a bite that it should be considered a punishment. Therefore, by addressing the merits of the Ex Post Facto claim, the majority, despite its qualification that its holding applies only to juveniles, appears to unnecessarily create an inconsistency in the application of the law. See State v. Myers, supra.
Therefore, I concur in the result only.
NOTES
[1] We have consolidated the cases C.M. v. State (JU-96-52500.01), and C.D.M. and S.D. v. State (JU-96-51630), for purposes of appeal. C.M. is not related to C.D.M. S.D. is C.D.M.'s mother and was named a party to the action pursuant to § 12-15-31(5), Ala.Code 1975, and Rule 31, Ala.R.Juv.P.

To protect the anonymity of the parties involved in this case we are using their initials. Rule 52, Ala.R.App.P.
[2] The Community Notification Act provides a system for notifying a community that a convicted sex offender who is being released from prison intends to make his residence in that community.
[3] Section 15-20-22(e) provides: "No criminal sex offender shall be allowed to establish a residence or accept employment within 1,000 feet of the property on which any public school, private or parochial school, licensed daycare center, or any other child care facility is located." Section 15-20-22(a)(1) specifically addresses cities in Alabama with dense populations. This section provides:

"In the cities of Birmingham, Mobile, Huntsville, and Montgomery, the Chief of Police shall notify all persons who have a legal residence within 1,000 feet of the declared residence of the released criminal sex offender, and all public and private schools, licensed daycare centers, and any other child care facilities within three miles of the declared residence of the released criminal sex offender, that the criminal sex offender will be establishing his or her residence."
Section 15-20-22(g) provides: "No criminal sex offender shall be allowed to establish a residence or any other living accommodation where a minor resides. Notwithstanding the foregoing, a criminal sex offender may reside with a minor if the criminal sex offender is the parent of the minor...."
[4] "Megan's Law" was named for Megan Kanka, a seven-year-old who was kidnapped, raped, sodomized, and murdered by a neighbor in her New Jersey community who was a twice-convicted sex offender. Neighbors had not been informed of these convictions.
[5] Those sex offenses to the Act are found in § 15-20-21(5). This section defines a criminal sex offense as: rape in the first or second degree; sodomy in the first or second degree; sexual torture; sexual abuse in the first or second degree; enticing a child to enter a vehicle, room, house, office, or other place for immoral purposes; promoting prostitution in the first or second degree; violating Alabama's Child Pornography Act; kidnapping a minor; incest; soliciting a child by computer for the purpose of committing a sexual act; and any solicitation, attempt, or conspiracy to commit any of the previously named offenses.
[6] If the strict scrutiny review is used, the state must show a compelling state interest in enacting the law. Smith v. Schulte, 671 So.2d 1334 (Ala.1995). If the intermediate level of review is used, the test is whether the law is reasonably related to the stated objective. Moore v. Mobile Infirmary Ass'n, 592 So.2d 156 (Ala.1991). If the rational-relation level is used, the law must be rationally related to the state's objective. Reese v. Rankin Fite Memorial Hospital, 403 So.2d 158 (Ala.1981).

A fundamental right has been defined as one which has its origins in the constitution. Scott v. Dunn, 419 So.2d 1340 (Ala.1982). A suspect class was defined by the United States Supreme Court in San Antonio Independent School Dist. v. Rodriguez, 411 U.S. 1, 28, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973), as a class "saddled with such disabilities, or subjected to such a history of purposeful unequal treatment, or relegated to such a position of political powerlessness as to command extraordinary protection from the majoritarian political process."
[7] The United States Supreme Court stated its reasons for this conclusion:

"Family relationships, by their nature, involve deep attachments and commitments to the necessarily few other individuals with whom one shares not only a special community of thoughts, experiences, and beliefs but also distinctively personal aspects of one's life."
468 U.S. at 619-20, 104 S.Ct. 3244. See also Moore v. East Cleveland, 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977) (right to live with relatives); Pierce v. Society of Sisters, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925) (the right of a parent to educate child as parent chooses).
[8] We are also concerned about the effect this law has on the parents and siblings of a juvenile sex offender. The Act forces a parent who has children other than the juvenile sex offender to choose which child may live with the parent. Certainly, no parent should have to make this choice.
[9] There was testimony at the hearing that there was no area in Birmingham in which C.M. or C.D.M. could live without violating the residency restrictions of the Act. § 15-20-22(e).
[10] Our holding today has no impact on our decision in Robinson v. State, 730 So.2d 252 (Ala.Cr.App.1998), where we held that an adult defendant pleading guilty to a sex offense did not have to be informed about the community notification act because the act does not impose an additional penalty.
[11] Our holding in this case does not address the constitutionality of the Act as it applies to Youthful Offenders; that issue was not before this Court.