Robert Salter appeals from a summary judgment denying his challenge to the constitutionality of the Community Notification Act, § 15-20-20 et seq., Ala. Code 1975 ("the CNA"), as that act is applied to him. We affirm.
 Facts
On July 31, 1984, Salter entered a guilty plea to the charge of sodomy in the first degree of a 12-year-old girl and was subsequently sentenced to 10 years in the state penitentiary. At the time of that conviction, Salter was 26 years old.
Salter served nine years and nine months of his sentence and was released in 1995. After his release from prison, Salter initially resided in the basement of his mother's house in Tuscaloosa County while he made repairs to the house he had occupied before he began serving his prison sentence.
In 1996, Salter moved into the house he had been repairing, which the parties referred to throughout this litigation as "the big house." The big house is located in Tuscaloosa County on a one-acre parcel of land that was owned by Salter. This 1-acre parcel of land adjoins a 12-acre parcel of land that is owned by Salter's mother. A portion of the big house rests across the boundary line between the 1-acre parcel of land and the 12-acre parcel of land.
At some point after Salter had established his residency at the big house, a child-care center opened within 2,000 feet of the big house. In March 2003, the child-care center changed names, but it remained in the same location under different ownership.
In July 2003, after he had defaulted on a mortgage on the big house, Salter was evicted from the big house by the new owner, who had purchased the property at a foreclosure sale. Salter subsequently moved into a structure referred to by the parties as "the little house." The little house is located 50 feet from the big house, entirely within the 12-acre parcel of land owned by Salter's mother, but is still within 2,000 feet of the building that houses the child-care center.
The Tuscaloosa County Sheriffs Office informed Salter that his change of residence violated the CNA because his new residence was within 2,000 feet of a licensed child-care facility.See § 15-20-26(a), Ala. Code 1975. Salter therefore left the little house and moved in with a friend in October 2003. His mother subsequently repurchased the big house. Salter plans to move back into the big house with his mother's permission. Salter filed this action against the State of Alabama and the Tuscaloosa County Sheriffs Office (hereinafter collectively referred to as "the State") challenging the constitutionality of the CNA as it applied to him. The trial court entered a summary judgment for the State, and Salter appeals.
 Standard of Review
We review a summary judgment de novo; we apply the same standard applied by the trial court. A motion for a summary judgment is to be granted when no genuine issue of material fact exists and the moving party is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. A party moving for a summary judgment must make a prima facie showing "that there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." Rule *Page 34 
56(c)(3); see Lee v. City of Gadsden, 592 So.2d 1036,1038 (Ala. 1992). If the movant meets this burden, "the burden then shifts to the nonmovant to rebut the movant's prima facie showing by `substantial evidence.'" Lee,592 So.2d at 1038 (footnote omitted). "[Substantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v.Founders Life Assurance Co. of Florida, 547 So.2d 870, 871
(Ala. 1989); see also § 12-21-12(d), Ala. Code 1975.
 Analysis
Section 15-20-26(a) of the CNA provides that "[u]nless otherwise exempted by law, no adult criminal sex offender shall establish a residence . . . within 2,000 feet of the property on which any school or child care facility is located." The evidence presented in this case establishes without dispute that Salter, an adult criminal sex offender, established a residence within 2,000 feet of property on which a child-care facility was located when he moved into the little house, thus violating § 15-20-26(a). On its face, the language of that subsection would likewise prohibit Salter from moving back into the big house because he would again be establishing a residence within 2,000 feet of the property on which a child-care facility is located. The only way Salter can legally reside in either the little house or the big house is if this court determines that § 15-20-26(a) of the CNA is unconstitutional as applied to Salter.
 Standing
Salter asserts that, as applied to his situation, the CNA violates three of his constitutional rights: the right to reside with his wife; the right to use and enjoy his property; and the right to work where he wants.
"Appellate courts will not pass upon a constitutional question unless some specific right of the appellant is directly involved." State v. Woodruff, 460 So.2d 325, 328
(Ala.Crim.App. 1984). A plaintiff must have "`standing to invoke the power of the court in his behalf.'" Ex parte State exrel James, 711 So.2d 952, 960 (Ala. 1998) (quoting Exparte Izundu, 568 So.2d 771, 772 (Ala. 1990)). "Standing . . . turns on `whether the party has been injured in fact and whether the injury is to a legally protected right.'" Statev. Property at 2018 Rainbow Drive, 740 So.2d 1025, 1027
(Ala. 1999) (quoting Romer v. Board of County Comm'rs ofthe County of Pueblo, 956 P.2d 566, 581 (Colo. 1998) (Kourlis, J., dissenting)) (emphasis omitted). "When a party without standing purports to commence an action, the trial court acquires no subject-matter jurisdiction." State v.Property at 2018 Rainbow Drive, 740 So.2d at 1028 (citingBarshop v. Medina County Underground Water ConservationDist, 925 S.W.2d 618, 626 (Tex. 1996)). The party asserting a constitutional challenge must demonstrate standing at all stages in the litigation, even prior to trial. State v.Woodruff, 460 So.2d at 328; see also NationalOrganization for Women, Inc. v. Scheidler, 510 U.S. 249,255, 114 S.Ct. 798, 127 L.Ed.2d 99 (1994) ("Standing represents a jurisdictional requirement which remains open to review at all stages of the litigation.").
In J.L.N. v. State, 894 So.2d 751 (Ala. 2004), our supreme court ruled that an adult criminal sex offender did not have standing to assert that the residency requirements of the CNA violated his fundamental right to marry. The sex offender in that case did not present any evidence indicating that he had married or had attempted to marry. Instead, the evidence showed merely that the sex offender was cohabiting with his victim in violation of § 15-20-26(b) and that they were engaged. *Page 35 
Concluding that the sex offender did not have a constitutional right to cohabit with his victim, the court dismissed the constitutional challenge due to lack of standing.894 So.2d at 754 n. 4.
In the present case, Salter asserts in his brief to this court that he has established a common-law marriage with a woman who lived with him in the big house and who moved with him into the little house; Salter argues that, because he has been deprived of his right to reside with his spouse, he has the necessary standing to assert a constitutional argument that application of the CNA violates one of his fundamental marital rights. The State refutes that contention, claiming that Salter has not established a common-law marriage and, thus, that he lacks the necessary standing in this case.
The record does not contain any of the evidentiary materials filed by the State allegedly supporting its position that Salter has not entered into a common-law marriage. However, in the absence of a complete record, this court must assume that the trial court had before it such evidence and facts as would support its judgment. See Stevenson v. Buryn,530 So.2d 832 (Ala.Civ.App. 1987). Consequently, this court must assume that the State made a prima facie showing that Salter was not involved in a common-law marriage. Accordingly, the burden shifted to Salter to present substantial evidence to create a genuine issue of material fact as to that issue.
In his brief, Salter does not direct this court to any evidence that supports his alleged common-law marriage; thus, Salter has failed to comply with Rule 28(g), Ala. R.App. P. Despite Salter's failure to comply with the Alabama Rules of Appellate Procedure, this court has nevertheless undertaken a review of the entire record to determine if, in fact, Salter presented substantial evidence of a common-law marriage. The only evidentiary material contained in the record is a five-page affidavit signed by Salter in which he repeatedly refers to his "wife"; however, this affidavit contains no facts to support the conclusion that the woman with whom he resided was, in fact, his common-law wife. Mere conclusory statements of alleged facts do not constitute substantial evidence of the facts asserted. See Brown ex rel. Brown v. St. Vincent'sHosp., 899 So.2d 227, 238-39 (Ala. 2004) (quoting Reidv. Jefferson County, 672 So.2d 1285, 1290 (Ala. 1995)). Accordingly, this court finds that Salter did not present substantial evidence of a common-law marriage that would give rise to the constitutional rights he alleges the CNA violates.
As for Salter's contention that he has lost the use and enjoyment of his land, the parties do not dispute that, because of his failure to meet his mortgage obligations, Salter no longer has any ownership interest in the land on which the big house is located. His mother now owns that land. The record further fails to disclose any alleged legally protectable interest Salter may have in the land other than his plan to reside on the land with his mother's permission. Likewise, the undisputed evidence shows that Salter has no property interest in the little house because it is located on land owned entirely by his mother.
In Lujan v. Defenders of Wildlife, 504 U.S. 555,560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992), the United States Supreme Court explained that standing requires proof that the plaintiff suffered an
 "`injury in fact' — an invasion of a legally protected interest which is (a) concrete and particularized, see [Allen v. Wright, 468 U.S. 737,] at 756 [(1984)]; Warth v. Seldin, 422 U.S. 490, 508 (1975); Sierra Club v. Morton, 405 U.S. 727, 740-41, n. *Page 36 
16 (1972); and (b) `actual or imminent, not "conjectural" or "hypothetical,"' Whitmore [v. Arkansas,] 495 U.S. [149,] at 155 [(1990)] (quoting Los Angeles v. Lyons, 461 U.S. 95
(1983))."
(Footnote omitted.) Accordingly, we must conclude that Salter does not have a legally protected interest in the big house or the little house that would support his constitutional challenges to the CNA
As for Salter's argument that the CNA impairs his right to work where he wants, the record contains no evidence indicating that the CNA has impeded Salter's job opportunities. Salter presented no evidence indicating that he has looked for a job, has applied for a job, has been rejected for a job, or has had a job offer rescinded on the basis of the application of the residency requirements or other requirements of the CNA. Salter cites no caselaw concluding that the CNA generally impairs employment possibilities. Cf. Smith v. Doe,538 U.S. 84, 100, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003) (concluding that Alaska's community-notification act did not cause any employment disadvantages for adult criminal sex offenders). Salter also failed to raise this argument at the trial-court level, which precludes appellate review. Rule 4(a)(3), Ala. R.App. P.; Shiver v. Butler County Bd. of Educ.,797 So.2d 1086, 1088 (Ala.Civ.App. 2000).
For the foregoing reasons, we conclude that Salter lacks standing to assert that application of the CNA violates his marital, property, and employment rights.
 Ex Post Facto and Double Jeopardy Arguments
Salter asserts that the CNA violates the prohibition against ex post facto laws contained in Article I, § 10 of the United States Constitution, which states, in pertinent part: "No state shall . . . pass any . . . ex post facto Law." Salter also makes a cursory assertion that the CNA subjects him to dual punishment in violation of the Double Jeopardy Clause of theFifth Amendment to the United States Constitution, which states, in part: "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life and limb."
In Smith v. Doe, 538 U.S. at 97, 123 S.Ct. 1140, the Supreme Court recognized that whether a statute violates the Ex Post Facto Clause or the Double Jeopardy Clause depends on resolution of the same question: Does the statute unconstitutionally impose a second punishment for the same criminal offense? If the statute is merely intended by the legislature to establish a civil regulatory scheme and is not punitive in nature or effect, it will be upheld as a constitutional exercise of legislative power. The party asserting the unconstitutionality of the statute must show "the clearest proof that a statute intended to create a civil regulatory scheme is actually a punitive criminal act.538 U.S. at 92, 123 S.Ct. 1140.
In State v. CM., 746 So.2d 410 (Ala.Crim.App. 1999), the Alabama Court of Criminal Appeals held that the CNA violated the Ex Post Facto Clause by punishingjuveniles convicted of sex crimes before its enactment. Salter argues that, because he was convicted before the CNA was enacted, the decision in CM. bound the trial court to find that the CNA violates his constitutional right against being punished a second time for his original sex crime. That argument is misplaced. Salter is not a juvenile criminal sex offender. See § 15-20-21(7), Ala. Code 1975 (defining "juvenile criminal sex offender" as "[a]n individual adjudicated delinquent of a criminal sex offense"). By virtue of his conviction of "Sodomy I" at the age of 26, Salter is classified as an "adult criminal sex offender."See § 15-20-21(1), Ala. Code 1975 (defining "adult criminal sex *Page 37 
offender" as "[a] person convicted of a criminal sex offense"). Hence, the holding in CM., which emanated from an analysis tailored specifically to issues relating to juvenile criminal sex offenders, is not dispositive of this appeal.
Rather, the decision in Lee v. State, 895 So.2d 1038
(Ala.Crim.App. 2004), controls the outcome of this case. InLee, the Alabama Court of Criminal Appeals relied heavily on Smith v. Doe, supra (rejecting an argument by two adult criminal sex offenders that Alaska's community-notification act violated the prohibition against ex post facto laws), to conclude that the CNA was not an ex post facto law, either facially or as applied to the appellant in that case, who was an adult criminal sex offender. The court held that the CNA was intended to create a civil regulatory scheme and that it did not have any punitive effect on the appellant that negated the legislative intent of the act.895 So.2d at 1042-43. See also Boyd v. State,960 So.2d 717 (Ala.Crim.App. 2006) (reaffirming Lee v. State,supra).
As in Lee and Boyd, Salter has failed to present any evidence indicating that the CNA is intended as a punitive criminal statute. The goal of the CNA, as set out in § 15-20-20.1, and as recognized in Lee, is to protect communities and their most vulnerable citizens, children, from the proven danger of recidivism by criminal sex offenders. Lee, 895 So.2d at 1042. As such, the CNA is intended as a civil scheme. Id.
Also as in Lee and Boyd, Salter has failed to present substantial evidence indicating that the residency requirements of the CNA have a punitive effect on him. InLee, supra, the Court of Criminal Appeals, in analyzing the punitive impact of the residency requirements of the CNA, followed the reasoning in Smith v. Doe,supra, which, in turn, relied on the factors identified inKennedy v. Mendoza-Martinez, 372 U.S. 144,83 S.Ct. 554, 9 L.Ed.2d 644 (1963), as pertinent to its determination whether a purportedly civil regulatory scheme actually imposed punishment on those affected by it:
 "`The factors most relevant to our analysis are whether, in its necessary operation, the regulatory scheme: has been regarded in our history and traditions as a punishment; imposes an affirmative disability or restraint; promotes the traditional aims of punishment; has a rational connection to a nonpunitive purpose; or is excessive with respect to this purpose.'"
Lee, 895 So.2d at 1042 (quoting Doe,538 U.S. at 97, 123 S.Ct. 1140, citing in turn Kennedy v.Mendoza-Martinez, 372 U.S. at 168-69, 83 S.Ct. 554).
In this case, Salter asserts only that the CNA punishes him by depriving him of his right to reside with his common-law wife and by depriving him of his right to use and enjoy his land. He has failed to argue or present any evidence as to anyMendoza-Martinez factor other than alleging "an affirmative disability or restraint." As we have already concluded, Salter has not presented substantial evidence of a common-law marriage or of a property right in the big house or the little house. Even if he had, Salter has not proven that the requirements of the CNA prevent him from establishing another residence in Tuscaloosa County with his alleged wife, even assuming that such proof would establish "an affirmative disability or restraint." Consequently, we must conclude that the CNA does not impose punishment on Salter in violation of the Ex Post Facto Clause.
Likewise, because the CNA cannot be considered a punitive statute in either intention or effect, enforcement of its residency *Page 38 
requirements against Salter cannot be classified as a violation of his constitutional right against double jeopardy. See,e.g., State v. Williams, 88 Ohio St.3d 513, 728 N.E.2d 342
(2000) (holding that once a community-notification act is determined to be nonpunitive, the Double Jeopardy Clause is inoperative); Commonwealth v. Kopicz, 840 A.2d 342
(2003) (accord).
 Conclusion
For the foregoing reasons, we affirm the trial court's judgment.
AFFIRMED.
THOMPSON, P.J., and PITTMAN, BRYAN, and THOMAS, JJ., concur.