Kurtz, Plaintiff-Respondent, v. City of Waukesha, and others, Defendants-Appellants.†

Supreme Court

*No. 76–456. Argued January 30, 1979.—Decided June 29, 1979.*
(Also reported in 280 N.W.2d 757.)

† Motion for reconsideration denied, with costs, on August 27, 1979.

104

For the appellants there were briefs by *Gerald T. Janis* and *Patrick F. Brown,* both of Waukesha, and oral argument by *Mr. Brown.*

For the respondent there was a brief by *Bruce F. Ehlke* and *Lawton & Cates* of Madison, and oral argument by *Mr. Ehlke.*

WILLIAM G. CALLOW, J. On April 6, 1973, the plaintiff, a woman schoolteacher, filed this action in Circuit Court for Waukesha County. The defendants include the City of Waukesha which, according to the complaint, controls the fiscal affairs of the defendant Waukesha Joint School District No. 1 through the defendant "Fiscal Board." The nonfiscal affairs of the District are

controlled by the defendant Board of Education. Joined as defendants with these governmental units are the members of the Board of Education, the Board's treasurer, the superintendent of the District, its personnel director, and the principal of the school at which the plaintiff taught. The complaint alleges that, during the 1970–1971 school year, the plaintiff taught at an elementary school in the District. In January, 1971, she informed the defendants that she was pregnant. The defendants refused to allow her claim for accumulated sick leave pay during the time she was disabled as a result of the pregnancy. In April, 1971, they terminated her employment and have since refused to rehire her. She alleges that she has been without a job since that date.

The complaint alleges that the defendants' conduct constituted arbitrary and capricious sex discrimination in violation of the constitutional protections embodied in the Fourteenth Amendment to the United States Constitution and Article I of the Wisconsin Constitution; and the statutory provisions of 42 U.S.C. secs. 1983, 2000e–2 (a) (1) & (2) ; and secs. 111.32, 111.325, Wis. Stats. She further alleges that the defendants acted individually and pursuant to a conspiracy to deprive her of her employment.

Plaintiff alleges finally that, as a result of the defendants' conduct, she suffered "emotional upset and illness" and damage to her character. She seeks reinstatement and recovery of her sick leave pay for the period of her pregnancy-related disability, recovery of her salary and benefits for the years she was unemployed, and general and punitive damages against the individually-named defendants.

The defendants demurred to the complaint on the grounds that it failed to state a cause of action and that the court lacked jurisdiction over the defendants by rea-

son of governmental immunity. Secs. 263.06(1)(a) and (6), Stats. 1973. The trial court overruled the demurrer, and the defendants moved for reconsideration of the decision. From an order filed January 4, 1977, overruling the demurrer and denying the motion for reconsideration, the defendants appeal.

The issues on appeal are: (1) Does the complaint allege facts sufficient to constitute a cause of action? (2) Does the court lack personal jurisdiction over the defendants because of governmental immunity?

## I. DOES THE COMPLAINT ALLEGE FACTS SUFFICIENT TO CONSTITUTE A CAUSE OF ACTION?

In *Attoe v. Madison Professional Policemen's Asso.*, 79 Wis.2d 199, 205, 255 N.W.2d 489 (1977), this court summarized the principles applicable to appellate review of an order overruling a demurrer:

"Suffice it to emphasize that on demurrer, the pleadings are to be liberally construed with a view to substantial justice between the parties. The question which must be answered by the court is whether *any* cause of action has been stated upon which relief can be granted. It is not the theory of the plaintiff's case that is controlling. The plaintiff is bound by the facts he has alleged, not by his theory of recovery. *Val-Lo-Will Farms v. I. Azoff & Asso.*, 71 Wis.2d 642, 238 N.W.2d 738 (1976). A court is not necessarily compelled to determine whether a complaint states more than one cause of action. If a cause of action is stated in a complaint, although it may be combined with other allegations not constituting a separate cause of action, the demurrer must be overruled. *Schwartz v. Milwaukee*, 43 Wis.2d 119, 122, 168 N.W.2d 107 (1969)." (Emphasis in original.)

Here we have multiple theories of recovery stated in the complaint. Although we need only determine whether

the facts alleged state any cause of action, we deem it desirable, in view of the complexity of the issues presented, to discuss more than a single theory of recovery.

A. *The Fourteenth Amendment and Sec. 1983*

42 U.S.C. sec. 1983 provides the statutory vehicle for the enforcement of the Fourteenth Amendment rights:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

The Fourteenth Amendment provides in part:

"[N]or shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

We have, since this appeal was taken, recognized that state courts have subject-matter jurisdiction over claims based on sec. 1983. *Terry v. Kolski,* 78 Wis.2d 475, 254 N.W.2d 704 (1977). Also decided after the trial court's order was *Monell v. New York City Dept. of Social Services,* 436 U.S. 658 (1978), in which the Court, overruling its prior holding in *Monroe v. Pape,* 365 U.S. 167 (1961), held that local governments are "persons" within the meaning of sec. 1983. The defendants maintain that *Monell* should be applied prospectively only.

Retrospective application of a judicial holding is a question of policy, not constitutional law. *Linkletter v. Walker,* 381 U.S. 618, 629 (1965). In *Chevron Oil Co. v. Huson,* 404 U.S. 97, 106 (1971), the Court articulated three factors to be considered in deciding whether a holding ought not to be applied retrospectively:

"In our cases dealing with the nonretroactivity question, we have generally considered three separate factors. First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed. Second, it has been stressed that 'we must . . . weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation.' Finally, we have weighed the inequity imposed by retroactive application, for '[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the "injustice or hardship" by a holding of nonretroactivity.' " (Citations omitted.)

We find nothing in the *Monell* opinion limiting its application to cases arising in the future. Our consideration of the factors set forth in *Chevron* supports the conclusion that there is no reason to depart from the general principle of retrospective application. It is true that *Monell* represents a departure from the law established in *Monroe v. Pape, supra*. However, in deciding to overrule the holding in *Monroe v. Pape* that municipalities did not fall within the definition of "persons" in sec. 1983, the *Monell* Court observed that *Monroe* was a departure from prior practice and that municipalities can assert no claim of reliance on *Monroe* to violate constitutional rights. 436 U.S. at 695–700. The Court also noted that it had decided many cases dating from 1954, brought under sec. 1983, in which the principal defendant was a school board. 436 U.S. at 663–65. The significance of *Monell's* overruling *Monroe* pales in the light of these considerations. We conclude that retrospective application of *Monell's* holding would generally further the policies embodied in sec. 1983 and would not work inequitable results.

The Court in *Monell,* supra at 690–91 said:

"Local governing bodies, therefore, can be sued directly under sec. 1983 for monetary, declaratory, or injunctive relief where, . . . , the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by the body's officers. Moreover, although the touchstone of the sec. 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution, local governments, like every other sec. 1983 'person,' by the very terms of the statute, may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels."

The plaintiff attributed her denial of sick leave and subsequent discharge to the defendants. Each personal defendant is named in his individual and official capacities. It is a reasonable inference, consistent with a liberal reading of the complaint, that the acts alleged involved official policy. The question presented is whether the defendants' alleged conduct in denying the plaintiff sick leave and in discharging her violates rights guaranteed by the Fourteenth Amendment.

The validity under the Fourteenth Amendment of the plaintiff's alleged employment termination is controlled by the principles of *Cleveland Board of Education v. LaFleur*, 414 U.S. 632 (1974). In that case the Court struck down school board regulations requiring pregnant teachers to take an unpaid leave of absence several months before the expected birth of the child. The Court observed that "[b]y acting to penalize the pregnant teacher for deciding to bear a child, overly restrictive maternity leave regulations can constitute a heavy burden on the exercise of [the] protected freedoms [of choice in marriage and family matters]." *Id.* at 640. Neither the state interest in continuity of educational

instruction nor the fitness of teachers justified the crea-
tion of an "irrebuttable presumption" of unfitness to
teach at a prescribed point months before the child's
birth. *Id.* at 645–48. *See also: Turner v. Dept. of Em-
ployment Security,* 423 U.S. 44 (1975) (Per Curiam).
The Third Circuit Court of Appeals, relying on *LaFleur,*
recently held invalid the discharge of a pregnant police
officer where there was no evidence that she was un-
able to work due to the pregnancy. *United States v.
City of Philadelphia,* 573 F.2d 802, 810 (3d Cir. 1978).
Though *LaFleur* was decided after the plaintiff's al-
leged discharge, we have no trouble concluding, on the
basis of the guideposts established in *Chevron,* that its
holding should apply to these facts.[1]

The defendants cite *Geduldig v. Aiello,* 417 U.S. 484
(1974), as authority for the proposition that failure to
cover pregnancy medical expenses is not a violation of
equal protection under the Fourteenth Amendment. The
Court's holding in that case was premised on a detailed
factual record; here we are only asked to decide whether
the complaint states a cause of action. We cannot say,
on the basis of the facts alleged in the complaint, that
the plaintiff will be foreclosed from recovery by the
*Geduldig Case.*

Although we have found a cause of action to exist, we
will proceed to comment on other causes of action al-
leged in the complaint.

B.   *Title VII*

Title VII of the Civil Rights Act of 1964, 42 U.S.C. sec.
2000e, *et seq.,* became effective July, 1965, and was
amended in 1972 to bring within its protection state and
local government employees. It provides:

"(a) It shall be an unlawful employment practice for
an employer—

---

[1] *See, generally,* the discussion and cases cited in *Cleveland
Board of Education v. LaFleur,* 414 U.S. 632, 638–40, n. 5 (1974).

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin."

The remedial provisions of Title VII require an aggrieved person to file a charge with the Equal Employment Opportunities Commission. If the Commission dismisses the charge, or fails to bring a civil suit within a prescribed period of time following the filing of the charge, or does not enter into a conciliation agreement involving the aggrieved party, he or she may begin a civil action. 42 U.S.C. sec. 2000e–5(f)(1). The Act gives the federal district courts jurisdiction over such actions, establishes venue, and prescribes scheduling and administrative procedures for the actions. 42 U.S.C. sec. 2000e–5(f)(3), (4), (5). We need not determine whether jurisdiction is exclusively reserved to the federal courts[2] because the plaintiff failed to accommodate the jurisdictional[3] prerequisites before beginning an action. As to this cause of action, the demurrer should therefore have been sustained.

C. *The Fair Employment Act*

The plaintiff alleges that the denial of sick pay for the period of her pregnancy-related disability and subsequent discharge creates a cause of action under the Fair Employment Act.

[2] *See: Fox v. Eaton Corporation,* 48 Ohio St.2d 236, 358 N.W. 2d 536 (1976).

[3] *See: McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 798 (1973).

The Fair Employment Act, secs. 111.31–111.37, Stats., prohibits, among other things, employment discrimination on the basis of sex. Secs. 111.32(5)(g), 111.325. In *Wisconsin Telephone Co. v. ILHR Dept.*, 68 Wis.2d 345, 366–68, 228 N.W.2d 649 (1975), the court held that the Department of Industry, Labor and Human Relations (DILHR), charged with administering the Act by sec. 111.33, could, under the terms of the statute, find sex discrimination if the employer treated temporary disability due to pregnancy differently from other temporary disabilities without a satisfactory business justification. In *Ray-O-Vac v. ILHR Dept.*, 70 Wis.2d 919, 927–35, 236 N.W.2d 209 (1975), the court held violative of secs. 111.32 (5)(g) and 111.325, Ray-O-Vac's group insurance plan providing different maximum periods of benefits and different conditions of eligibility for benefits for pregnancy-related disabilities than for other temporary disabilities. In *Yanta v. Montgomery Ward & Co., Inc.*, 66 Wis.2d 53, 224 N.W.2d 389 (1974), the court recognized that violation of the Act gives rise to a civil cause of action for damages for lost wages resulting from the discrimination.

The defendants argue that (1) the Fair Employment Act does not apply because sec. 118.20, Stats., provides the sole remedy for teachers suffering discrimination, and that section did not proscribe sex discrimination until 1975; and (2) even if the Fair Employment Act applies to teachers, the Act as applied is unconstitutional because (a) it constitutes an impermissible delegation of control of education to the Department of Industry, Labor and Human Relations, (b) the terms of the Act are impermissibly vague, and (c) a 1975 amendment extending the Act's coverage retroactively to government employees deprives the defendants of due process of law.

(1) *Sec. 118.20, Stats.*

Sec. 118.20(1), Stats., prohibits discrimination against teachers on the basis of sex and other factors. The

state superintendent or his designee may receive and investigate complaints, hold hearings, subpoena witnesses, and take testimony "to effectuate the purposes of this section." Sec. 118.20(2). If conciliation fails and the superintendent finds that discrimination has occurred, he is to make findings and "recommend such action by the respondent as shall satisfy the purposes of this section." The superintendent is authorized to order compliance with his recommendations. The statute permits a person aggrieved by noncompliance with the order to have it enforced by suit in equity. Sec. 118.20(4).

Sec. 118.20, Stats., was, until 1969, simply a prohibition on discrimination in the employment of teachers in public schools because of race, nationality, or political or religious affiliations. It provided for a fine, imprisonment, and the removal from office of anyone violating the section. Sec. 40.435, Stats. 1965. By Chapter 264, secs. 1–3, Laws of 1969, the legislature vested in the state superintendent responsibility for enforcing the statute's prohibition. By Chapter 94, sec. 63, Laws of 1975, the statute was amended to add a prohibition on sex discrimination, except where sex may be a bona fide occupational qualification as defined in sec. 111.32(5)(g)4.

The Fair Employment Act is premised on the following declaration of purpose:

"**111.31 Declaration of policy.** (1) The practice of denying employment and other opportunities to, and discriminating against, properly qualified persons by reason of their age, race, creed, color, handicap, sex, national origin or ancestry, is likely to foment domestic strife and unrest, and substantially and adversely affect the general welfare of a state by depriving it of the fullest utilization of its capacities for production. The denial by some employers, licensing agencies and labor unions of employment opportunities to such persons solely because of their age, race, creed, color, handicap, sex, national origin or ancestry, and discrimination against them in

employment, tends to deprive the victims of the earnings which are necessary to maintain a just and decent standard of living, thereby committing grave injury to them.

"(2) It is believed by many students of the problem that protection by law of the rights of all people to obtain gainful employment, and other privileges free from discrimination because of age, race, creed, color, handicap, sex, national origin or ancestry, would remove certain recognized sources of strife and unrest, and encourage the full utilization of the productive resources of the state to the benefit of the state, the family and to all the people of the state.

"(3) In the interpretation and application of this subchapter, and otherwise, it is declared to be the public policy of the state to encourage and foster to the fullest extent practicable the employment of all properly qualified persons regardless of their age, race, creed, color, handicap, sex, national origin or ancestry. This subchapter shall be liberally construed for the accomplishment of this purpose."

The Act addresses two evils of employment discrimination: its harmful effect on the aggrieved party and its detrimental effect on the state as a whole. The Department of Industry, Labor and Human Relations is specifically authorized to award back pay to a person who has suffered discrimination in employment. Sec. 111.36(3) (b), Stats.

We are called upon to determine the dual implications of Chapters 111 and 118, Stats. Sec. 118.20, is part of a chapter dealing with "general school operations." The penalty provision, sec. 118.20(5), part of the statute from its inception in 1933, reinforces the inference that the purpose of sec. 118.20 is primarily to regulate an aspect of school administration and only secondarily to provide individual redress for discrimination. In view of the sensible rule that "[c]onstruction of statutes should be done in a way which harmonizes the whole system of law of which they are a part, and [that] any

conflict should be reconciled if possible," *Muskego-Norway C.S.J.S.D. No. 9 v. W.E.R.B.*, 35 Wis.2d 540, 556, 151 N.W.2d 617 (1967), sec. 118.20 cannot be construed as an exclusive remedy.

The legislature's 1975 amendment extending the Act's coverage to employees of school districts is persuasive of this construction. The amendment included, within the definition of "employer," "this state and any employer as defined in sec. 41.02(4)," and was to apply to then-existing causes of action arising under the Act. Sec. 41.02(4), Stats., defines "employer" to include school districts or "any other unit of government." Having chosen to include school districts in the class of covered *employers*, the absence of an exclusion for teachers as covered *employees* is indicative that the provisions of secs. 111.32–111.325 and 118.20, are not to be considered exclusive of each other. We conclude sec. 118.20, is not an exclusive remedy but is supplementary to the remedial provisions of the Fair Employment Act.

(2) *Constitutionality*

This appeal presents the question of the constitutionality of the Fair Employment Act. The declared policy of this state regarding constitutional challenge is set forth in sec. 806.04(11), Stats.[4] Though this appeal does not involve an action for declaratory judgment, a pronouncement by this court on the constitutionality of an act is percedent no matter how the issue is presented.

---

[4] "806.04  **Declaratory judgments**

"(11) PARTIES. When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration may prejudice the right of persons not parties to the proceeding. In any proceeding which involves the validity of a municipal ordinance or franchise, the municipality shall be made a party, and shall be entitled to be heard. If a statute, ordinance or franchise is alleged to be unconstitutional, the attorney general shall also be served with a copy of the proceeding and be entitled to be heard."

We conclude that cogent reasons exist for the application of the service requirement in all cases involving constitutional challenges. While we recognize constitutional challenges may be raised by a general demurrer, *State v. Texaco*, 14 Wis.2d 625, 111 N.W.2d 918 (1961), the trial court properly refused to reach the constitutional issue because the parties did not give the state an opportunity to be heard. A challenge to a statute is recognized even when the constitutional issue is collateral to or a preliminary step in the determination of the rights sought to be determined, *O'Connell v. Board of Education, Joint District #10*, 82 Wis.2d 728, 264 N.W.2d 561 (1978). Because we hold that the service requirement is applicable to this case and the record is devoid of evidence of service on the attorney general, it follows that the trial court could not properly consider the constitutional issue raised by the demurrer. We therefore cannot review that issue.

D. *Article I, Section 1, Wisconsin Constitution*

The trial court did not speak to the issue of the plaintiff's cause of action under the Wisconsin Constitution. The issue was not specifically addressed on appeal. We decline to consider this issue on the record before us because we have ruled the complaint states a cause of action.[5]

## II. DOES THE COURT LACK PERSONAL JURISDICTION OVER THE DEFENDANTS BY REASON OF GOVERNMENTAL IMMUNITY?

Local government bodies are not entitled to absolute immunity under section 1983. *Monell, supra,* 436 U.S. at 701. School board members enjoy a qualified, but not

---

[5] Because we conclude that the complaint states a cause of action against the defendants individually, we need not reach the conspiracy issue.

absolute, immunity from liability for damages under section 1983 arising out of the unconstitutional imposition of school discipline. *Wood v. Strickland,* 420 U.S. 308 (1975). The Court in *Wood* reasoned:

"We think there must be a degree of immunity if the work of the schools is to go forward; and, however worded, the immunity must be such that public school officials understand that action taken in the good-faith fulfillment of their responsibilities and within the bounds of reason under all the circumstances will not be punished and that they need not exercise their discretion with undue timidity." *Id.* at 321.

Under the *Wood* test, these defendants cannot claim absolute immunity from suit under section 1983 or the Fair Employment Act. *See: Shirley v. Chagrin Falls Exempted Village Schools Board of Education,* 521 F.2d 1329 (6th Cir. 1975); *Hutchison v. Lake Oswego School District No. 7,* 519 F.2d 961 (9th Cir. 1975).

By amending the Act to effectively apply to state employees with causes of action arising under the Act, the legislature has consented to suit under the provisions of the Act, and this consent extends to municipalities. Therefore, the general provisions of sec. 895.43(3), Stats., are superseded by the specific authority of the Fair Employment Act.

*By the Court.*—Order affirmed.