IN RE the COMMITMENT OF Dennis R. THIEL:

STATE of Wisconsin, Petitioner-Respondent,†

v.

Dennis R. THIEL, Respondent-Appellant.

Court of Appeals

*No. 99–0316. Oral argument November 13, 2000.—Decided January 24, 2001.*

## 2001 WI App 52

(Also reported in 625 N.W.2d 321.)

†Petition to review denied.

On behalf of the respondent-appellant, the cause was submitted on the briefs of *John D. Lubarsky*, assistant state public defender, Madison. There was oral argument by *John D. Lubarsky*.

On behalf of the petitioner-respondent, the cause was submitted on the briefs of *Diane M. Welsh*, assistant attorney general, and *James E. Doyle*, attorney general. There was oral argument by *Sally L. Wellman*.

Before Brown, P.J., Anderson and Snyder, JJ.

¶ 1. ANDERSON, J. At the direction of the Wisconsin Supreme Court, we have considered what is the appropriate remedy for the new statutory interpretation announced in *State v. Thiel*, 2000 WI 67, 235

Wis. 2d 823, 612 N.W.2d 94. We conclude that the requirement that the State must prove beyond a reasonable doubt that a WIS. STAT. ch. 980 (1997–98)[1] detainee is within ninety days of release shall be applied retroactively, and Thiel shall receive the benefit of retroactive application. We further conclude that the Double Jeopardy Clause does not prevent a remand to the circuit court for a trial limited to the issue of whether Thiel was within ninety days of his release when the State filed the ch. 980 petition.

¶ 2. On October 27, 1999, we certified to the Wisconsin Supreme Court the question of "whether the State must affirmatively prove that a ch. 980, STATS., respondent is within ninety days of release or discharge."[2] The supreme court accepted certification and

---

[1] All references to the Wisconsin Statutes are to the 1997–98 version unless otherwise noted.

[2] WISCONSIN STAT. § 980.02(2) governs the contents of a petition seeking to commit an individual as sexually violent. The statute provides in relevant part:

(2) A petition filed under this section shall allege that all of the following apply to the person alleged to be a sexually violent person:
(a) The person satisfies any of the following criteria:
1. The person has been convicted of a sexually violent offense.
. . . .
(ag) The person is within 90 days of discharge or release, on parole, extended supervision or otherwise, from a sentence that was imposed for a conviction for a sexually violent offense, from a secured correctional facility, as defined in s. 938.02(15m) . . . .
(b) The person has a mental disorder.
(c) The person is dangerous to others because the person's mental disorder creates a substantial probability that he or she will engage in acts of sexual violence.

The issue certified required that § 980.02(2) be read in conjunction with WIS. STAT. § 980.05(3)(a), which states that "[a]t a trial on a petition under [WIS. STAT. ch. 980], the petitioner has

ruled that "in a commitment trial pursuant to WIS. STAT. ch. 980, the State must prove beyond a reasonable doubt that the subject of the petition is within 90 days of release or discharge from a sentence imposed on the basis of a sexually violent offense." *Thiel*, 2000 WI 67 at ¶ 1.

¶ 3. In reaching this conclusion, the supreme court, using generally accepted principles of statutory interpretation, found that the statutory language was clear and unambiguous that the legislature intended the State to prove beyond a reasonable doubt that an individual was within ninety days of release. *See id.* at ¶¶ 10, 19. The supreme court found support for its conclusion in the legislative history of WIS. STAT. ch. 980 as well as two recent decisions it had issued. *See Thiel*, 2000 WI 67 at ¶¶ 22–24. The supreme court observed that the result in *Thiel* was preordained because both *State v. Kienitz*, 227 Wis. 2d 423, 429 n.6, 597 N.W.2d 712 (1999), and *State v. Curiel*, 227 Wis. 2d 389, 396 n.4, 597 N.W.2d 697 (1999), correctly stated the law that the State had the burden of proving beyond a reasonable doubt all of the allegations in the petition for commitment, including that the person was within ninety days of discharge. *See Thiel*, 2000 WI 67 at ¶¶ 23–25.

¶ 4. The supreme court went on to scour the record to determine if the State satisfied its burden in this case. *See id.* at ¶¶ 26–34. The court reached the conclusion that "the trial record in this case does not establish beyond a reasonable doubt that the State filed its commitment petition within 90 days of Thiel's release." *Id.* at ¶ 35. The supreme court then turned to the appropriate remedy:

the burden of proving the allegations in the petition beyond a reasonable doubt."

In response to a question at oral argument regarding remedies, the State referenced several remedy issues, none of which have been briefed or argued before this court.

These issues include whether our decision should have retroactive or prospective application, and whether a decision affects only the "pipeline" cases on direct appeal or also reaches to cases on collateral review. Another remedy concern referenced by the State is whether the court may remand the narrow issue involving proof of the 90-day requirement, as is done in other civil cases with respect to specific issues such as the appropriate measure of damages. As the State notes, concerns of claim preclusion or double jeopardy may also arise.

In light of the significant remedy issues, we hesitate to decide the question of appropriate remedy without affording the parties an opportunity to address adequately the above and other remedy issues. Rather, we believe the more prudent course is to remand the cause to the court of appeals and direct the court to address the issue of the appropriate remedy.

*Id.* at ¶¶ 35–37.[3]

### RETROACTIVE OR PROSPECTIVE APPLICATION

¶ 5. Thiel now argues that *Griffith v. Kentucky*, 479 U.S. 314, 328 (1987), insures his "right to benefit from his own litigation." He contends that the supreme court's decision did not announce a new rule of sub-

[3] After this case was returned to us, we ordered supplemental briefs limited to the issues as framed by the supreme court in its remand; additionally, oral argument was conducted. The facts and procedural history of this case can be found in the decision of the Wisconsin Supreme Court and will not be repeated here.

stantive criminal law that requires this court to engage in an analysis of whether the decision should be applied retroactively. He argues that the State's mistaken view of its burden of proof is "not the sort of compelling inequity that would warrant only a prospective application of the court's decision." Rather, Thiel insists that the decision did nothing more than illuminate the plain language of the two statutes involved, and he is entitled to the benefit of his labors and have the decision apply to him.

¶ 6. The State urges us to apply what it describes as a new statutory interpretation, totally prospectively. The prospective application of a court decision is often called "sunbursting."[4] The State reasons that prospective application is called for because the decision does not call into question jury verdicts finding that an individual was a proper person for commitment as a sexually violent offender because the ninety-day filing requirement is not a substantive criterion of commitment. *See State v. Post*, 197 Wis. 2d 279, 325, 541 N.W.2d 115 (1995). The State asserts that prospective application will not be unfair to Thiel because he has never claimed that he was not within ninety days of

---

[4] The origin of this colorful nickname was explained in *Jacque v. Steenberg Homes, Inc.*, 209 Wis. 2d 605, 623 n.5, 563 N.W.2d 154 (1997):

Judge Thomas Fairchild has suggested that "[i]f one thinks of a judicially pronounced new rule of law as the rosy dawn of a new day, 'sunbursting' has an appropriate connotation." Thomas E. Fairchild, *Limitation of New Judge-Made Law to Prospective Effect Only: "Prospective Overruling" or "Sunbursting"*, 51 Marq. L. Rev. 254, 255 (1967–68). However, the illustrative nature of the term is purely coincidental. Prospective overruling earned the nickname "sunbursting" from the name of a party to litigation involving prospective application. *Great Northern Railway Company v. Sunburst Oil & Refining Co.*, 287 U.S. 358 (1932).

release when the commitment petition was filed. The State also argues that retroactive application will impose a burden on courts having to relitigate commitments and put the public at risk because of the potential that sex offenders will walk the streets unsupervised.

¶ 7. We disagree with Thiel that he is entitled to the benefit of the decision in his case because it does not announce a new rule of substantive criminal law. His approach is too simplistic and fails to take into consideration the history and use of retroactivity analysis in this state. Wisconsin generally adheres to the "Blackstonian Doctrine," which provides that a decision that clarifies, overrules, creates or changes a rule of law is to be applied retroactively. *See Fitzgerald v. Meissner & Hicks, Inc.,* 38 Wis. 2d 571, 575, 157 N.W.2d 595 (1968). In spite of this, an appellate court may employ the technique of prospective application—"sunbursting"—to mitigate hardships that may arise with the retroactive application of a new rule of law. *See Harmann v. Hadley,* 128 Wis. 2d 371, 378–79, 382 N.W.2d 673 (1986). "Sunbursting" is an approved method of dealing with both changes within the common law as well as changes in the way that courts interpret statutes. *See Colby v. Columbia County,* 202 Wis. 2d 342, 364, 550 N.W.2d 124 (1996). Whether to limit a new rule of law to prospective application is a policy question for the appellate court that we review de novo. *See Jacque v. Steenberg Homes, Inc.,* 209 Wis. 2d 605, 613, 563 N.W.2d 154 (1997).

¶ 8. *Griffith* is a decision from the United States Supreme Court that abandoned a three-pronged analysis for claims of retroactivity of new constitutional rules of criminal procedure in favor of an easier

approach that provides that a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases pending on direct review or not yet final.[5] *See Griffith*, 479 U.S. at 320, 328. The *Griffith* approach is applicable in Wisconsin. *See State v. Koch*, 175 Wis. 2d 684, 694, 499 N.W.2d 152 (1993).

¶ 9. However, *Griffith* is not applicable to Thiel because this case is not a criminal prosecution. *See State v. Carpenter*, 197 Wis. 2d 252, 271–72, 541 N.W.2d 105 (1995). Accordingly, we will not apply the *Griffith* approach and mechanically hold that the decision announced in *Thiel* will be applied retroactively to all cases on direct review or not yet final. We choose to apply the analysis that is used when a new rule of substantive or procedural civil law is announced. The application of such an analysis is supported by the application of civil rules of procedure to WIS. STAT. ch. 980 commitment proceedings. *See State v. Brown*, 215 Wis. 2d 716, 718–19, 573 N.W.2d 884 (Ct. App. 1997) ("Chapter 980, containing the civil commitment procedure for sexually violent persons, is subject to the provisions of Chapters 801 to 847."). Moreover, the use of the same analysis as used in civil cases was approved by the Wisconsin Supreme Court in an area of the law where there are fundamental liberty interests protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *See*

[5] The three-pronged analysis used prior to *Griffith v. Kentucky*, 479 U.S. 314 (1987), considered: "(1) the effect of the new rule on the fact finding process; (2) the extent of reliance by law enforcement authorities on the old standards; and (3) the effect on the administration of justice of a retroactive application of the new standards." *State v. Koch*, 175 Wis. 2d 684, 694, 499 N.W.2d 152 (1993).

*Walworth County DHS v. Elizabeth W.*, 189 Wis. 2d 432, 436, 525 N.W.2d 384 (Ct. App. 1994).

> Although serious human rights are implicated in the termination-of-parental rights proceedings, the proceeding is civil in nature. Accordingly, we conclude that it is appropriate in determining the question of retroactivity or not to apply the test of *Chevron Oil Co. v. Huson*, 404 U.S. 97 (1971), approved by this court in *Kurtz v. City of Waukesha*, 91 Wis. 2d 103, 109, 280 N.W.2d 757 (1979).

*M.W. v. Monroe County DHS*, 116 Wis. 2d 432, 442, 342 N.W.2d 410 (1984).

¶ 10. In *Kurtz*, the Wisconsin Supreme Court adopted the retroactivity analysis set forth by the United States Supreme Court in *Chevron Oil*. The three prongs of that analysis require consideration of whether: (1) the decision creates a new principle of law, either by overruling clear past precedent on which parties have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed; (2) retrospective application will promote or retard the operation of the rule recognized or established by the decision; and (3) retrospective application could produce substantial inequitable results. *See Kurtz*, 91 Wis. 2d at 112.[6] Wisconsin's adherence to the

---

[6] The United States Supreme Court has abandoned the *Chevron Oil Co. v. Huson*, 404 U.S. 97 (1971), three-pronged analysis in favor of an approach patterned after *Griffith*. In *Harper v. Virginia Department of Taxation*, 509 U.S. 86 (1993), the Supreme Court held:

> When this Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct

"Blackstonian Doctrine," favoring retroactivity, requires that all three factors must be satisfied in order for *Thiel* to apply retroactively. *See Browne v. WERC*, 169 Wis. 2d 79, 112, 485 N.W.2d 376 (1992).

¶ 11. This analysis recognizes that "the use of the sunbursting technique relieves some pressure against departure from precedent and serves the same social interest in stability that is the root of *stare decisis*." *Harmann*, 128 Wis. 2d at 379. We are cautioned that limiting a new rule to prospective application only or "sunbursting" is appropriate only if there is a compelling judicial reason to limit its application to future litigants. *See Dupuis v. Gen. Cas. Co.*, 36 Wis. 2d 42, 45, 152 N.W.2d 884 (1967). Unfortunately, there is no simple rule to guide us in deciding whether to "sunburst"; we are required to consider the particular equities of

> review and as to all events, regardless of whether such events predate or postdate our announcement of the rule.

*Id.* at 97.

We decline to follow *Harper* and adopt its approach that makes all new rules retroactive. First, *Harper* only applies to the interpretation of federal law by the United States Supreme Court. *See id.* Second, a radical change in the manner in which Wisconsin appellate courts approach retroactivity analysis is within the exclusive superintending authority of the Wisconsin Supreme Court. *See Arneson v. Jezwinski*, 206 Wis. 2d 217, 225, 556 N.W.2d 721 (1996). Finally, it is within the inherent power of the state's highest court to give a decision prospective or retrospective application without offending constitutional principles. *See Great Northern Ry. Co.*, 287 U.S. at 364. As the New Mexico Supreme Court explained, this principle of federalism permits each state to give full faith and credit to the juristic philosophy of the state and its conception of law, its origin and nature. *See Beavers v. Johnson Controls World Servs., Inc.*, 881 P.2d 1376, 1380 (N.M. 1994) (citing Justice Cardozo's opinion in *Great Northern Railway*).

the new statutory interpretation in deciding whether to apply it retroactively or to "sunburst." *See Harmann*, 128 Wis. 2d at 379.

## A. *New Principle of Law*

¶ 12. This *Chevron Oil* factor asks if the new rule or new statutory interpretation is a "clear break" from prior law. *See Browne*, 169 Wis. 2d at 112. In applying this factor, we first consider whether a substantial number of people relied upon a statutory interpretation that relieved the State from proving beyond a reasonable doubt that an individual was within ninety days of release. We also must take into account whether considerable harm or detriment will come to them if the new rule is applied prospectively. *See Jacque*, 209 Wis. 2d at 625.

¶ 13. Since 1995, the jury instruction used in commitment proceedings has not required that the State prove an individual was within ninety days of mandatory release.[7] With more than thirty reported appeals from commitment proceedings under WIS. STAT. ch. 980, it is reasonable to infer that a substantial number of people have relied upon the old statutory interpretation. Because the ninety-day period is not a substantive criterion of commitment but is only a

---

[7] The Criminal Jury Instructions Committee's commentary to WIS JI—CRIMINAL 2502, "Commitment As A Sexually Violent Person Under Chapter 980," provides:

> Subsection (2)(ag) of § 980.02 requires that the petition further allege that the person is within 90 days of discharge or release from a sentence imposed for the sexually violent offense. The Committee concluded that this fact need not be submitted to the jury, though it certainly must be established before the trial can go forward.

pleading criterion, *see Post*, 197 Wis. 2d at 325, we are concerned with the application of a procedural rule which does not affect the basic accuracy of the fact-finding process at the commitment proceeding.[8] *See State v. Benzel*, 220 Wis. 2d 588, 592, 583 N.W.2d 434 (Ct. App. 1998). We cannot say with any confidence that if a person subject to ch. 980 had been aware of this new interpretation of the statute that he or she would have had the opportunity to conduct himself or herself in a manner that took the person outside of the commitment criteria. *See State v. Jason J.C.*, 216 Wis. 2d 12, 20, 573 N.W.2d 564 (Ct. App. 1997). Therefore, we conclude that those who relied upon the old interpretation of the statute were not substantially harmed by that reliance and that the change in the proof requirement is not a "clear break" from past practice.

¶ 14. The new statutory interpretation imposing an obligation upon the State to prove beyond a reasonable doubt that an individual is within ninety days of release did not come as a complete surprise. As the supreme court explained in *Thiel*, the burden on the State was foreshadowed by the legislative history of WIS. STAT. ch. 980 and the court's decisions in *Kienitz* and *Curiel*. *See Thiel*, 2000 WI 67 at ¶¶ 22–24. We can hardly conclude that the rule announced in *Thiel* unexpectedly overruled old precedent or caught a substantial number of people by surprise. *Cf. Browne*, 169 Wis. 2d at 112.

---

[8] The substantive criteria for commitment of individuals under WIS. STAT. ch. 980 apply only to "those who have been convicted of specific sexually violent acts in the past and who are substantially probable to engage in sexually violent acts in the future because their current mental disorder predisposes them to engage in such conduct." *State v. Post*, 197 Wis. 2d 279, 325, 541 N.W.2d 115 (1995).

## B. Effect on Operation of Rule

■

¶ 15. We must consider whether retroactive application will promote or retard operation of the new requirement that the State prove that an individual is within ninety days of release. We do not see how retroactive application would retard the implementation of the new statutory interpretation. Before *Thiel,* courts and prosecutors throughout the state were operating on the belief that before the commitment proceeding could go forward, the fact that the individual was within ninety days of release had to be established. *See* WIS JI—CRIMINAL 2502. All the new rule does is to elevate the formality of establishing that the individual is within ninety days of release to a formal proof requirement.

## C. Equity

■

¶ 16. The final *Chevron* factor is whether retroactive application will cause substantial inequitable results. Here, we consider not just the inequity imposed on Thiel, but also the potential unfairness to others who are in a similar situation. We do so in light of our conclusion that reliance on the old interpretation of the statute did not substantially harm any individual because it did not call into question the basic accuracy of the fact-finding process. The equity factor requires us to take into account the desirability of treating similarly situated parties alike.[9] *See Beavers*

[9] In Wisconsin, the phrase "similarly situated parties" is narrowly defined to be factually and legally similar cases that share similar procedural histories. *See Bell v. County of Milwaukee,* 134 Wis. 2d 25, 28, 40–41, 396 N.W.2d 328 (1986).

*v. Johnson Controls World Servs., Inc.*, 881 P.2d 1376, 1382–83 (N.M. 1994). Equity necessitates a retroactive application of the new rule to make certain that other WIS. STAT. ch. 980 detainees, who properly raised a challenge to the State's failure to prove that they were within ninety days of release, receive the benefit of the *Thiel* decision.

¶ 17. When the equity prong of the *Chevron* test is analyzed, we also have to consider the inequities that may be imposed on the administration of justice and the public. *See Fitzgerald*, 38 Wis. 2d at 576–77. We have no doubt that a retroactive application will have a negative impact on the circuit courts of this state because there will be cases that will have to be relitigated. In an era of tight judicial resources, unwarranted consumption of those resources must be avoided. We agree with the State that a retroactive application could have a negative impact on public safety with the potential that individuals adjudged to be sexually violent could be released and there would be little or no supervision.

■

¶ 18. The above analysis utilizing the *Chevron Oil* factors does not establish a compelling judicial need to limit the *Thiel* decision to a prospective application. *Thiel* does not represent a significant departure from WIS. STAT. ch. 980 commitment hearing procedures that would mandate a prospective application only. It does not enhance the basic accuracy of the fact-finding process. Equity does insist on giving Thiel, and similarly situated individuals, the benefit of the rule. Finally, the potential negative impact on the administration of justice and public safety is not enough to require a prospective application only. Therefore, we

conclude that the new statutory interpretation announced in *Thiel* is to be applied retroactively.

¶ 19. However, we do not apply it retroactively to all detainees under WIS. STAT. ch. 980. Rather, it is applicable to Thiel and to all cases on direct appeal that have not been finalized as of the date of the release of *Thiel*, June 23, 2000.[10] To be eligible for retroactive application of the rule, a challenge to the sufficiency of the evidence specifically citing to the failure of the State to prove beyond a reasonable doubt that the individual was within ninety days of release must have been made in the trial court. In the alternative, a challenge to the sufficiency of the evidence or lack of evidence—the State's failure to prove beyond a reasonable doubt—that the individual was within ninety days of release must have been prominently raised in a direct appeal.

¶ 20. We conclude that in respect to cases of this nature—the commitment of sexually violent individuals—it would be contrary to public policy to permit the review of any case in which a direct appeal is no longer available. *See M.W.*, 116 Wis. 2d at 442; *see also State ex rel. Schmelzer v. Murphy*, 201 Wis. 2d 246, 256, 548 N.W.2d 45 (1996) ("a new rule of criminal procedure should not be applied retroactively to cases on collateral review").

---

[10] A case is not yet final when "prosecution is pending, no judgment of conviction has been entered, the right to a state court appeal from a final judgment has not been exhausted, and the time for certiorari review in the United States Supreme Court has not expired." *Koch*, 175 Wis. 2d at 694 n.3.

¶ 21. If we apply the new rule to him, Thiel seeks to have his commitment vacated, arguing that the evidence as to an essential element was lacking. He relies upon *State v. Smith*, 229 Wis. 2d 720, 726, 600 N.W.2d 258 (Ct. App. 1999), and WIS. STAT. § 980.05(1m) to support his argument that all of the constitutional rights available to a criminal defendant in a criminal proceeding are available to an individual in a WIS. STAT. ch. 980 commitment proceeding. He includes in these rights: (1) the due process right not to be committed except upon proof beyond a reasonable doubt; (2) the double jeopardy prohibition against a second commitment proceeding if there is a failure of proof at the first proceeding; and (3) the general concepts of due process and fair play.

¶ 22. The State counters that there is no prohibition against remanding this case to the circuit court for an evidentiary hearing focused on the question of whether Thiel was within ninety days of his release date when the petition was filed. The State offers alternative arguments. First, it continues its theme that a WIS. STAT. ch. 980 proceeding is a civil proceeding and double jeopardy does not apply because there is no punishment intended by the statutory scheme. Second, citing to *Burks v. United States*, 437 U.S. 1 (1978), the State asserts that double jeopardy is not violated if the reason for a second trial is trial court error. Third, WIS. STAT. § 980.05(1m) does not create constitutional rights that bar retrial. Finally, the result of the new statutory interpretation does not entitle Thiel to a judgment of acquittal invoking double jeopardy because the State proved each of the criterion for commitment.

¶ 23. We approach this issue with a clean slate. We have neither guidance from the supreme court nor

the benefit of a circuit judge's legal reasoning. Therefore, we will apply our de novo standard of review.

¶ 24.　Before we address the appropriate remedy for Thiel and others who are similarly situated, a brief review of the purpose of the Double Jeopardy Clause is in order. The Double Jeopardy Clause of the Fifth Amendment has been interpreted to include three constitutional protections: "It protects against a second prosecution for the same offense after an acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishment for the same offense." *State v. Kurzawa*, 180 Wis. 2d 502, 515, 509 N.W.2d 712 (1994) (citation omitted). Whether this case is remanded for an evidentiary hearing or whether Thiel is entitled to a vacation of his commitment invokes the first protection of the Double Jeopardy Clause.

¶ 25.　Contrary to Thiel's argument that the first protection of the Double Jeopardy Clause applies through the application of WIS. STAT. § 980.05(1m) and bars any remand, we conclude that it does not apply to WIS. STAT. ch. 980 commitment proceedings. Section 980.05(1m) provides:

> At the trial to determine whether the person who is the subject of a petition under s. 980.02 is a sexually violent person, all rules of evidence in criminal actions apply. All constitutional rights available to a defendant in a criminal proceeding are available to the person.

This section operates to give an individual the same constitutional rights he or she would have in a criminal proceeding. *See Smith*, 229 Wis. 2d at 727 ("Because a defendant in a criminal proceeding has a fundamental constitutional right to be competent at trial, we must

conclude that § 980.05(1m), STATS., grants ch. 980 respondents the same right . . . .").

■ 26. This section does not grant all constitutional rights available to a criminal defendant to an individual in a WIS. STAT. ch. 980 proceeding. In *Carpenter*, 197 Wis. 2d at 270–71, the Wisconsin Supreme Court embraced *Allen v. Illinois*, 478 U.S. 364 (1986), where the United States Supreme Court held that the "decision . . . to provide some of the safeguards applicable in criminal trials cannot itself turn these proceedings into criminal prosecutions requiring the full panoply of rights applicable there." *Id.* at 372. From this statement, we conclude that some of the fundamental constitutional rights that are available are limited to those that a criminal defendant enjoys during the course of a criminal prosecution. *See Smith*, 229 Wis. 2d at 727 (right to be competent); *State v. Watson*, 227 Wis. 2d 167, 202, 595 N.W.2d 403 (1999) (right to confront witnesses); *State v. Zanelli*, 212 Wis. 2d 358, 371–72, 569 N.W.2d 301 (Ct. App. 1997) (right to remain silent).

¶ 27. The first protection of the Double Jeopardy Clause is not a trial right enjoyed during a criminal prosecution. The double jeopardy bar operates to prohibit second and subsequent criminal prosecutions when a defendant is acquitted. A "criminal prosecution" is a term of art; when people speak of prosecutions, they usually mean a proceeding in which guilt is to be determined. *See State v. Petty*, 201 Wis. 2d 337, 356–57, 548 N.W.2d 817 (1996). According to BLACK'S LAW DICTIONARY 1221 (6th ed. 1990), a "criminal prosecution" is "[a] criminal action; a proceeding instituted and carried on by due course of law, before a competent tribunal, for the purpose of determining the

guilt or innocence of a person charged with crime." The first protection afforded by the Double Jeopardy Clause only operates after acquittal in a criminal prosecution and the State attempts to commence a second criminal prosecution.

¶ 28. Even if we were to hold that the first protection of the Double Jeopardy Clause is available to a WIS. STAT. ch. 980 detainee through operation of WIS. STAT. § 980.05(1m), we would still hold that it is not available where the error is the State's failure to prove beyond a reasonable doubt that an individual was within ninety days of release. In *Burks*, the United States Supreme Court was confronted with the court of appeals reversing a conviction for armed robbery finding that the prosecution had failed to rebut the defendant's proof as to insanity. *See Burks*, 437 U.S. at 3–4. The federal court of appeals remanded the case to the trial court to determine whether to enter a judgment of acquittal or order a new trial. *See id.* at 4. The United States Supreme Court held, however, that "the Double Jeopardy Clause precludes a second trial once the reviewing court has found the evidence legally insufficient." *Id.* at 18.

¶ 29. *Burks* is instructive in this case. Writing for a unanimous court, Chief Justice Burger found it necessary to clarify double jeopardy analysis by distinguishing reversals due to trial error and those resulting from evidentiary insufficiency. *See id.* at 14–15.

> In short, reversal for trial error, as distinguished from evidentiary insufficiency, does not constitute a decision to the effect that the government has failed to prove its case. As such, it implies nothing with respect to the guilt or innocence of the defendant. Rather, it is a determination that a defendant has

been convicted through a judicial process which is defective in some fundamental respect, e.g., incorrect receipt or rejection of evidence, incorrect instructions, or prosecutorial misconduct. When this occurs, the accused has a strong interest in obtaining a fair readjudication of his guilt free from error, just as society maintains a valid concern for insuring that the guilty are punished.

The same cannot be said when a defendant's conviction has been overturned due to a failure of proof at trial, in which case the prosecution cannot complain of prejudice, for it has been given one fair opportunity to offer whatever proof it could assemble. Moreover, such an appellate reversal means that the government's case was so lacking that it should not have even been *submitted* to the jury. Since we necessarily afford absolute finality to a jury's *verdict* of acquittal—no matter how erroneous its decision—it is difficult to conceive how society has any greater interest in retrying a defendant when, on review, it is decided as a matter of law that the jury could not properly have returned a verdict of guilty.

*Id.* at 15–16 (citation and footnote omitted).

¶ 30. The Wisconsin Supreme Court's reversal was not premised on insufficiency of the evidence supporting the statutory criteria for commitment. The reversal was premised on an incorrect interpretation of the State's burden of proof on the issue of whether Thiel was within ninety days of release. The court, prosecution and Thiel shared the mistaken belief that it was not necessary to prove beyond a reasonable doubt that Thiel was within ninety days of release. Because of this mistaken belief, the State was not given a fair opportunity to present competent evidence of

Thiel's release date. The State did not fail in an attempt to prove Thiel's release date because it never attempted to present evidence. We are satisfied that the Double Jeopardy Clause does not prohibit a remand of this case limited to providing the State the opportunity to present competent evidence regarding Thiel's release date.

¶ 31. There is no need to remand for an entire new trial. Thiel does not challenge the prosecution's evidence on the criteria for commitment. *See Post*, 197 Wis. 2d at 325; WIS. STAT. § 980.02(2)(a)1, (b), (c). In *State v. Peete*, 185 Wis. 2d 4, 23, 517 N.W.2d 149 (1994), the supreme court affirmed a conviction of possession of cocaine with intent to deliver but reversed and remanded for a new trial on the limited issue of whether Peete was in possession of a dangerous weapon. We have the same situation—there is no challenge to the sufficiency of the evidence supporting the criteria for commitment and there is no need to have a new trial on those issues; all that is necessary is a trial limited to whether Thiel was within ninety days of his release. *See State v. Weber*, 146 Wis. 2d 817, 822, 433 N.W.2d 583 (Ct. App. 1988) (a remand permitting a retrial of all issues would be "contrary to good use of judicial time and resources").

### CONCLUSION

¶ 32. We conclude that there is no compelling judicial reason to limit the new interpretation of WIS. STAT. §§ 980.02(2) and 980.05(3)(a) to only prospective application because (1) it is not a clear break from the prior interpretation; (2) the operation of the new interpretation will be promoted by a retroactive application; and (3) the balancing of the equities calls for retroac-

tive application. Thiel and others who are similarly situated are entitled to the benefit of retroactive application of this new statutory interpretation. But public policy and the interest of finality do not permit retroactive application to any case in which a direct appeal is no longer available. The retroactive application of the new statutory interpretation can be achieved by remanding for an evidentiary hearing at which the State will be permitted to attempt to prove beyond a reasonable doubt that Thiel was within ninety days of release without offending the Double Jeopardy Clause.

*By the Court.*—Order reversed and cause remanded with directions.