In re the Commitment of Richard A. Brown, Jr.:
State of Wisconsin, Petitioner-Respondent,

v.

Richard A. Brown, Jr., Respondent-Appellant.†

Court of Appeals

*No. 99–0635. Submitted on briefs August 26, 2002.—Decided September 24, 2002.*

2002 WI App 260

(Also reported in 655 N.W.2d 157.)

† Petition to review denied 12-10-02.

\

On behalf of the respondent-appellant, the cause was submitted on the briefs of *Steven P. Weiss*, assistant state public defender.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Sally L. Wellman*, assistant attorney general.

Before Wedemeyer, P.J., Schudson and Curley, JJ.

¶ 1. SCHUDSON, J. Richard A. Brown, Jr., appeals from the December 11, 1998 judgment and order for commitment, following a trial in which the jury found that he was a sexually violent person, and from the January 12, 2000 order denying his post-commitment motion for a new trial and relief from the judgment.

¶ 2. Brown argues that: (1) he is entitled to a new trial in the interest of justice "because of the complete confusion and the multitude of errors committed by the expert witnesses, the trial attorneys and the trial judge concerning the proper standard for commitment under the 'substantial probability' language" of WIS. STAT. § 980.02(2)(c) (1999–2000)[1]; (2) the trial court erred in failing to strike a juror for cause, thus requiring him to use a peremptory strike to correct the court's error; and (3) the trial court erred in failing to instruct the jury that the State was required to prove that he

---

[1] All references to the Wisconsin Statutes are to the 1999–2000 version. The statutes cited in this opinion have not substantially changed since the time periods relevant to the issues in this appeal.

239

was within ninety days of release, as required by Wis. Stat. §§ 980.02(2)(ag) and 980.05(3)(a), and, further, that the State failed to prove that essential element. We affirm.

## I. BACKGROUND

¶ 3. This case has a long history. It commenced in March 1995 when the State filed a ch. 980 petition, and it rendered various appeals even before Brown's jury trial took place in November 1998. *See State v. Brown,* 215 Wis. 2d 716, 573 N.W.2d 884 (Ct. App. 1997).

¶ 4. Following the jury trial and the initiation of subsequent appellate proceedings, we held the case pending the Wisconsin Supreme Court's resolution of legal issues in other cases that were also involved in this appeal. *See State v. Thiel,* 2000 WI 67, 235 Wis. 2d 823, 612 N.W.2d 94 *(Thiel I); State v. Laxton,* 2002 WI 82, 254 Wis. 2d 185, 647 N.W.2d 784. The resolution of some of those issues depended, in part, on the United States Supreme Court's determination of *Kansas v. Crane,* 534 U.S. 407 (2002). And resolution of one of the issues in the instant appeal further depended on this court's determination of additional issues that had to be re-solved following remand of one of the cases from the Wisconsin Supreme Court. *See State v. Thiel,* 2001 WI App 52, 241 Wis. 2d 439, 625 N.W.2d 321, *review denied,* 2001 WI 88, 246 Wis. 2d 165, 630 N.W.2d 219 (No. 99–0316) *(Thiel II).*

¶ 5. Further, we provided the parties the opportu-nity to file supplemental briefs to offer their views on the impact of the two *Thiel* decisions on this case. We have considered their very helpful supplemental sub-missions, and we now resolve one more issue spawned by the *Thiel* decisions: whether the supreme court's

determination that affirmance of a ch. 980 commitment is appropriate "if the trial record reflects that the petition was filed within 90 days of [a defendant's mandatory release] date, notwithstanding the circuit court's failure to make a specific finding to that effect," *Thiel*, 2000 WI 67 at ¶ 26, depends on whether the commitment case was tried by the bench or by a jury.

## II. DISCUSSION

### A. Interest of Justice/"Substantial Probability"

¶ 6. Brown first argues for a new trial in the interest of justice contending that "the real controversy was not fully or properly tried due to various errors concerning the proper legal standard and definition of the single most important element that the [S]tate was required to prove: [t]he 'substantial probability' that [he] would reoffend." He maintains that a "multitude of missteps concerning the proper jury instruction on the 'substantial probability' element denied him a fair trial and precluded the case from being properly and fully tried to the jury." We disagree.

¶ 7. WISCONSIN STAT. § 752.35 provides this court the authority to grant a new trial in the interest of justice "if it appears from the record that the real controversy has not been fully tried." Our discretion to order a new trial in the interest of justice, however, should be exercised carefully and only in exceptional cases. *See Beacon Bowl, Inc. v. Wisconsin Elec. Power Co.*, 176 Wis. 2d 740, 794, 501 N.W.2d 788 (1993); *Vollmer v. Luety*, 156 Wis. 2d 1, 11, 456 N.W.2d 797 (1990). Where the trial court did not err, and where the

record establishes that the case was fully tried, a new trial is not appropriate. *See Beacon Bowl*, 176 Wis. 2d at 794. Here, although the trial traveled an unusual road on the way to the court's ultimate jury instruction on "substantial probability," we conclude that the instruction was correct and the case was fully tried.

¶ 8. When Brown's trial took place in the first week of November 1998, Wis JI—Criminal 2502 set forth the elements the State had to prove in order to establish that a person was "dangerous to others because he has a mental disorder which creates a substantial probability that he will engage in acts of sexual violence." The instruction did not define "substantial probability" and, at that time, no appellate decision required a court to further define it. *See State v. Zanelli*, 212 Wis. 2d 358, 372–76, 569 N.W.2d 301 (Ct. App. 1997); *State v. Curiel*, 227 Wis. 2d 389, 401, 597 N.W.2d 697 (1999). Just one month before Brown's trial, however, on October 1, 1998, this court ordered publication of *State v. Kienitz*, 221 Wis. 2d 275, 585 N.W.2d 609 (Ct. App. 1998), in which this court concluded that "substantially probable" means "considerably more likely to occur than not to occur." *Id.* at 293–300.

¶ 9. At the beginning of Brown's trial, *the prosecutor* asked the trial court to supplement the 2502 jury instruction by including the *Kienitz* definition of "substantially probable." *Defense counsel* objected, arguing that the court should use the standard instruction, given that the supreme court had not yet determined whether this court's definition of "substantially probable" was correct.[2] The trial court deferred ruling until

---

[2] The supreme court granted review in both *Curiel* and *Kienitz* on October 14, 1998, just before Brown's trial, but did not decide them until 1999, long after his trial. The court

the final instructions conference. At the instructions conference, the trial court concluded that it would use the standard 2502 instruction but added that if the definition came into dispute in the course of closing arguments, or if the jury requested clarification of the standard, it would add the *Kienitz* definition.

¶ 10. During the trial, the witnesses offered certain testimony consistent with the *Kienitz* definition. Dr. Norman Goldfarb, a psychologist employed by the Department of Corrections, sometimes testified in terms of merely "more likely than not." However, in response to the prosecutor's question about whether he believed "there [was] a substantial probability, which is defined as *considerably more* likely to occur than not, that [Brown would] act out sexually in the future" (emphasis added), Dr. Goldfarb answered, "Yes, I do." Similarly, another psychologist, Dr. Caton Roberts, responding to the prosecutor's question, "[H]ave you formed an opinion to a reasonable degree of professional certainty if these disorders create a substantial probability[,] and by that I mean *considerably more* likely than not to occur, that [Brown will] engage in acts of sexual violence in the future" (emphasis added), answered that he had reached that opinion and that "they do create that substantial probability."

¶ 11. When, during closing argument, defense counsel began suggesting numerical/percentile estimates of "substantial probability," and when counsel even argued that such probability was in the "range" of "at least" seventy or eighty per cent, the prosecutor

concluded that the jury instruction must include an additional definition of "substantial probability," and concluded that it should be defined as "much more likely than not." *State v. Curiel*, 227 Wis. 2d 389, 415, 597 N.W.2d 697 (1999); *State v. Kienitz*, 227 Wis. 2d 423, 442, 597 N.W.2d 712 (1999).

asked to approach the bench. A sidebar conference followed and, immediately thereafter, the court instructed the jury, "Substantial probability is not defined numerically as a percentage point, but I would offer to you the definition that substantial probability means considerably more likely to occur than not to occur." Defense counsel did not object.

¶ 12. Despite the apparent care with which the trial court conferred with counsel and approached this issue, and despite the fact that defense counsel did not object when the trial court instructed the jury using the *Kienitz* definition, Brown argues: "Without reason or warning, in the middle of his closing argument, after the entire trial, the judge changed her mind and instructed the jury with the *Kienitz* definition. That was totally unfair and completely undercut [his] defense strategy." Further, despite the manner in which the prosecutor's questions and the witnesses' answers were framed within the *Kienitz* standard, Brown now argues that the experts' testimonies failed to establish "substantial probability" consistent with *Kienitz*. Clearly, the record refutes Brown's claim that the trial court erred when it "refused to follow the published court of appeals decision in *Kienitz* at the beginning of the trial."

¶ 13. Brown's position on appeal is further deflated by his closing argument *following* the trial court's interruption and *Kienitz* instruction defining "substantial probability." Defense counsel then continued: "[W]hat does that mean? Considerably more likely to occur than not occur? I would argue that it's more than just fifty-one percent[;] it's that high range [of at least seventy to eighty per cent] that I mentioned."

¶ 14. Thus, even if Brown is correct in asserting that, despite his objection at the beginning of the trial, the trial court should have employed the *Kienitz* stan-

244

dard from the beginning, its failure to do so did not, as he claims, "undercut [his] defense strategy . . . to argue to the jury that 'substantial probability' was a very high standard, and one which the jury would define for itself." After all, following the court's supplemental instruction incorporating the *Kienitz* definition, counsel was able to continue his same percentile argument.[3] And why not? After all, "considerably more likely than not" may indeed suggest something in "at least" the seventy-to-eighty percent range counsel argued.

¶ 15. Thus, Brown's strategy was not undermined by the trial court's *Kienitz* instruction. Therefore, based on this compelling record, we reject Brown's argument for a new trial in the interest of justice.

### B. Jury Selection

██

¶ 16. Brown next argues that the trial court erred in failing to strike a prospective juror for cause and that he was prejudiced by being forced to use one of his peremptory strikes to remove him. Although a few years ago, when the parties first briefed this issue, a more thorough analysis would have been required, we now need do no more than recognize that, under the supreme court's recent decision in *State v. Lindell*, 2001 WI 108, 245 Wis. 2d 689, 629 N.W.2d 223 (overruling *State v. Ramos*, 211 Wis. 2d 12, 564 N.W.2d 328 (1997)), Brown's argument fails.

¶ 17. Brown used a peremptory strike to remove the prospective juror he challenged. He does not argue that any biased jurors actually served on the jury in his

---

[3] And, as the State points out, defense counsel never objected to the instruction "on the grounds that the additional instruction during closing argument constituted an unfair surprise or hampered him in any way in presenting his case."

case. Thus, under *Lindell*, even if the trial court erred in failing to strike the prospective juror, Brown "received that which he was entitled to under state law when he used a peremptory challenge." *Id.* at ¶ 131. He was tried by a fair and impartial jury and is not entitled to a new trial. *See id.* at ¶¶ 90–91, 113, 118.

## C. The Ninety-Day Element

██

¶ 18. Finally, Brown argues that the trial court erred in failing to instruct that the State was required to prove that he was within ninety days of release, as required by Wis. Stat. §§ 980.02(2)(ag) and 980.05(3)(a), and, further, that the State failed to prove that element. Because the undisputed documentary evidence established that Brown was within ninety days of his release date when the State filed the commitment petition, we conclude, under *Thiel I*, that he is not entitled to a new trial on that element.

¶ 19. In *Thiel I*, the supreme court held that ch. 980 requires the State to prove that its petition was filed within ninety days of a defendant's release date. *Thiel*, 2000 WI 67 at ¶¶ 1, 10–21. The supreme court also stated, however: "We will affirm the order of commitment if the trial record reflects that the petition was filed within 90 days of Thiel's [mandatory release] date, notwithstanding the circuit court's failure to make a specific finding to that effect." *Id.* at ¶ 26. Because, in *Thiel I*, the record was not sufficiently clear for the supreme court to determine whether Thiel was within ninety days of his release when the State filed the petition, it remanded the case to this court to determine the appropriate remedy. *Id.* at ¶¶ 1, 29–38. On remand, in *Thiel II*, this court concluded, in part, that because there was "no challenge to the sufficiency

of the evidence supporting the criteria for commitment . . . all that [was] necessary [was] a trial limited to whether Thiel was within ninety days of his release." *Thiel*, 2001 WI App 52 at ¶ 31.

¶ 20. Here, no new trial is needed because the record is clear and undisputed. As summarized by the State in its initial brief to this court:

> A certified copy of [Brown's] sentence data was admitted into evidence and that document shows his mandatory release date was March 9, 1995. The petition itself is in the record as document 2; the petition states Brown's mandatory release date is March 9, 1995. The petition is file[-]stamped March 3, 1995. Brown admits this timely filing in his brief.

(Citations omitted.) In further confirmation, the State, in its supplemental brief, notes that "the uncontradicted documents in the record . . . prove Brown was within ninety days of his release date when the petition was filed," and that "Brown has never challenged the accuracy of . . . this information."

¶ 21. Brown does not disagree or dispute the uncontradicted documents in any way. Instead, he argues that the *Thiel* circumstances are significantly distinguishable because Thiel's appeal came from a bench trial while his (Brown's) case was tried by a jury. We are not persuaded. We read nothing in *Thiel I* to suggest that the supreme court's unequivocal statement —"We will affirm the order of commitment if the trial record reflects that the petition was filed within 90 days of Thiel's [mandatory release] date, notwithstanding the circuit court's failure to make a specific finding to that effect," *Thiel*, 2000 WI 67 at ¶ 26—was to be limited to cases coming from bench trials.

¶ 22. Here, it is undisputed that "the trial record reflects that the petition was filed within 90 days" of

Brown's mandatory release date. *See id.* Accordingly, consistent with *Thiel I*, we affirm Brown's commitment. *See also Neder v. United States*, 527 U.S. 1, 15 (1999) (holding, *inter alia,* that, where element of a crime is undisputed, the erroneous omission of that element from the jury instruction is subject to harmless-error analysis).

· *By the Court.*—Judgment and orders affirmed.